**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JERRY VALDIVIA; ALFRED YANCY;
HOSSIE WELCH, on their own
behalf and on behalf of the class
of all persons similarly situated,
            *Plaintiffs-Appellees,*

            v.

ARNOLD SCHWARZENEGGER,
Governor of the State of
California,
            *Defendant-Appellant.*

Nos. 08-15889 and
09-15836

D.C. No.
2:94-CV-00671-
LKK-GGH

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, District Judge, Presiding

Argued and Submitted
January 11, 2010—San Francisco, California

Filed March 25, 2010

Before: John T. Noonan, Michael Daly Hawkins and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Hawkins;
Partial Concurrence and Partial Dissent by Judge Noonan

4817

**COUNSEL**

Vickie P. Whitney, Office of the Attorney General of the State of California, Sacramento, California, and S. Anne

Johnson, Hanson Bridgett LLP, San Francisco, California, for the defendant-appellant.

Loren G. Stewart and Ernest Galvan, Rosen, Bien & Galvan LLP, San Francisco, California; Geoffrey Holtz, Bingham McCutchen LLP, San Francisco, California, for the plaintiffs-appellees.

Kent S. Scheidegger, Criminal Justice Legal Foundation, Sacramento, California, for amici Criminal Justice Legal Foundation, Crime Victims United of California, and Senator George Runner.

Wendy Musell, Stewart & Musell, San Francisco, California, for amici The American Civil Liberties Union of Northern California, Legal Services for Prisoners and Children, The Justice Policy Institute, the National Council on Crime and Delinquency, The Sentencing Project, Hadar Aviram, W. David Ball, Sharon Dolovich, Malcolm M. Feeley, Michael Pinard, Jonathan Simon and Jeremy Travis.

---

## OPINION

HAWKINS, Circuit Judge:

These consolidated appeals stem from the November 2003 Valdivia Permanent Injunction ("the Injunction")—based on a stipulation between Jerry Valdivia ("Valdivia") and a class of similarly situated California parolees[1] ("Plaintiffs"), and Governor Arnold Schwarzenegger and the State of California (collectively "the State")—prescribing procedures for parole

---

[1]More specifically, the Plaintiff class consists of: "(1) California parolees at large; (2) California parolees in custody as alleged parole violators, and who are awaiting revocation of their state parole; and (3) California parolees who are in custody having been found in violation of parole and who have been thereupon sentenced to prison custody."

revocation hearings in California. Here, the State appeals two post-Injunction orders: (1) the March 25, 2008 order ("March 2008 order") adopting the Injunction-related recommendations of the court-appointed Special Master regarding the use of hearsay evidence in parole revocation hearings; and (2) the March 26, 2009 order ("March 2009 order") denying the State's motion to modify the Injunction to conform to the voter promulgated statute, Cal. Penal Code § 3044, formerly California Proposition 9 ("Proposition 9").

Bound by *United States v. Comito*, 177 F.3d 1166 (9th Cir. 1999), we affirm the March 2008 order. Because the March 2009 order made no express determination that any aspect of the California parole revocation procedures, as modified by Proposition 9, violated federal constitutional rights, nor any determination that the Injunction was necessary to remedy a constitutional violation, we vacate and remand the March 2009 order for the district court to make that determination and to reconcile the Injunction and Proposition 9.

## Background Facts & Procedural History

In May 1994, Plaintiffs challenged the constitutionality of parole revocation procedures under the Fourteenth Amendment's right to due process, as defined in *Morrissey v. Brewer*, 408 U.S. 471, 487-90 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973). The district court granted partial summary judgment in favor of Plaintiffs, holding that California's parole revocation hearing system violated their procedural due process rights. *Valdivia v. Davis*, 206 F. Supp. 2d 1068, 1078 (E.D. Cal. 2002). The parties later agreed to the Injunction, which limited "the use of hearsay evidence . . . by parolees' confrontation rights in the manner set forth in . . . *Comito*."

### The March 2008 order

In response to the parties' attempts to clarify the Injunction in light of *United States v. Hall*, 419 F.3d 980 (9th Cir. 2005), and after additional briefing and a hearing, the Special Master recommended: (1) the State should be found in violation of the Injunction; (2) all hearsay is subject to *Comito* balancing —weighing "the releasee's interest in his constitutionally guaranteed right to confrontation against the Government's good cause for denying it," *Comito*, 177 F.3d at 1170; (3) hearsay exceptions do not eliminate having to engage in full *Comito* balancing; and (4) the State did not demonstrate compliance with paragraph 24 of the Injunction.[2] In its March 2008 order, the district court fully adopted the Special Master's conclusions and recommendations. The State subsequently filed this timely appeal.

### The March 2009 order

Following passage of Proposition 9, Plaintiffs moved the district court to enforce the Injunction and bar implementation of Proposition 9 due to its conflict with the Injunction. The State countered with a motion to modify the Injunction to conform to Proposition 9.

After oral argument, the district court issued its March 2009 order, granting, in part, Plaintiffs' motion to enforce the Injunction, and denying the State's motion to modify it. The district court found that while several provisions of Proposition 9 conflict with the Injunction, application of the Supremacy Clause meant the Injunction prevails over state law, to the extent of any conflict. Modification was also not warranted,

---

[2]Paragraph 24 of the Injunction states: "The use of hearsay evidence shall be limited by the parolees' confrontation rights in the manner set forth under controlling law as currently stated in *United States v. Comito*, 177 F.3d 1166 (9th Cir. 1999). The Policies and Procedures shall include guidelines and standards derived from such law."

according to the district court, because Proposition 9 did not constitute a change in applicable law or facts. The court did not reach whether Proposition 9 violates the U.S. Constitution. The State then filed this timely appeal of the March 2009 order, and the two appeals were consolidated.

## JURISDICTION

We have jurisdiction over the appeal of both orders pursuant to 28 U.S.C. § 1292(a)(1).

Because the March 2008 order modifies an existing injunction, it is immediately appealable under 28 U.S.C. § 1292(a)(1). *See Gon v. First State Ins. Co.*, 871 F.2d 863, 865-66 (9th Cir. 1989). It also fulfills the three-part test of *Thompson v. Enomoto*, 815 F.2d 1323, 1326-27 (9th Cir. 1987). First, it "ha[d] the practical effect of the grant or denial of an injunction": it added the recommendations of the Special Master to the Injunction and mandated them, including the qualitative assessment and training of Deputy Commissioners and the Special Master's new role as a moderator and supervisor. *See id*. Second, it had "serious, perhaps irreparable consequences," *id*., such as the possible contravention of Supreme Court precedent by imposing "numerous . . . costly obligations" on the State, including additional required training and monitoring programs. *Cf. Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1097 (9th Cir. 2008) (finding serious consequences where "none of the other cases in which Allianz is, or may be, involved can be settled by or in the other courts in which they are located absent permission of Negrete Counsel and the court in this case"). Finally, it "can only be challenged by immediate appeal because if [the State] awaits the final determination of this case" the damage to hearsay determinations in parole hearings, and the cost of monitoring the Deputy Commissioners, will have already accrued. *See id*. It is unclear how long this litigation, which began over 15 years ago, will continue before a final judg-

ment issues. "A decision by us months or years after that cannot repair the damage." *Id*.

The March 2009 order is appealable, as both parties concede, under 28 U.S.C. § 1292(a)(1), as the State is appealing an order refusing to modify an injunction.

## STANDARD OF REVIEW

The district court's March 2008 order adopted the Special Master's report and recommendations in its entirety. The legal conclusions of a Special Master are reviewed de novo. *See United States v. Clifford Matley Family Trust*, 354 F.3d 1154, 1163 n.10 (9th Cir. 2004). Factual findings of a Special Master are entitled to deference and reviewed for clear error. *See Labor/Cmty. Strategy Ctr. v. Los Angeles County Metro. Transit Auth.*, 263 F.3d 1041, 1049 (9th Cir. 2001).

"[M]atters of discretion," such as evidentiary rulings and interpretations of the Federal Rules of Civil Procedure, are reviewed for abuse of discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175 (9th Cir. 2000). Under this standard, a reviewing court cannot reverse absent a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon a weighing of relevant factors. *SEC v. Coldicutt*, 258 F.3d 939, 941 (9th Cir. 2001). Motions for relief from judgment under Fed. R. Civ. P. 60(b), such as the one present in the appeal of the March 2009 order, are reviewed for abuse of discretion. *See United States v. Asarco Inc.*, 430 F.3d 972, 978 (9th Cir. 2005).

## ANALYSIS

### I.   The March 2008 Order

The State argues the district court erred in applying the *Comito* test to parole revocation hearings via the March 2008 order. It contends any hearsay evidence falling under a tradi-

tional or long-standing exception ought not to be subject to the *Comito* balancing test, based on this court's holding in *Hall*, 419 F.3d 980. This argument, however, fails. The law of this circuit is clear: the *Comito* test remains central to confrontation rights in parole hearings. The district court did not err in subjecting the State's parole revocation hearings to these requirements.

## A.   Nature of the confrontation rights of parolees

We begin by noting that parole revocation hearings are "not part of a criminal prosecution and thus the full panoply of rights due a [criminal] defendant" are not due a parolee. *Morrissey*, 408 U.S. at 480. Nonetheless, parolees are due certain "minimum requirements of due process," including the right to confront witnesses. *Id*. at 488-89. These rights, however, are based in the Due Process Clause of the Fourteenth and Fifth Amendments and not in the Confrontation Clause of the Sixth Amendment and its articulation in the *Crawford* line of cases.[3] *Hall*, 419 F.3d at 985-86 ("We, like the two circuits that have also addressed this question, see no basis in *Crawford* or elsewhere to extend the *Sixth Amendment* right of confrontation to supervised release proceedings.") (referencing *Crawford v. Washington*, 541 U.S. 36 (2004)).

**[1]** In *Comito*, this court specified the test for the confrontation rights of parolees. "[I]n determining whether the admission of hearsay evidence violates the releasee's right to

_____

[3]Our dissenting colleague takes issue with our use of *Comito* balancing "where no federal confrontation right is infringed," and where the Supreme Court has found that most hearsay exceptions do not implicate the Confrontation Clause of the Sixth Amendment. Dissenting Op. at 4839-40. But we are not faced here with applications of the Sixth Amendment Confrontation Clause to parole revocation hearings, rather, the right to confrontation as espoused by Fourteenth Amendment due process, and its articulation in *Morrissey* by the Supreme Court, and in *Hall* and *Comito* in our circuit. There is therefore a federal confrontation right at issue here, one that is rooted in due process rather than the Sixth Amendment.

confrontation in a particular case, the court must weigh the releasee's interest in his constitutionally guaranteed right to confrontation against the Government's good cause for denying it." 177 F.3d at 1170. The weight given to a parolee's right to confrontation is assessed by two non-exhaustive factors: "the importance of the hearsay evidence to the court's ultimate finding and the nature of the facts to be proven by the evidence." *Id.* at 1171. If the hearsay evidence is not important to the finding of a violation, the error in admitting the hearsay evidence can be considered harmless, but is still subject to the good cause analysis. *Id.* at 1171-72.

**[2]** Here, in the Injunction, the district court ordered the State to follow *Comito* and limit the use of hearsay evidence to the boundaries set by parolees' confrontation rights. The Special Master, and in turn the district court, did not err in the determination that *Comito* balancing continues to be the test in the Ninth Circuit, and that even if hearsay falls within a recognized exception, it is still subject to *Comito* balancing.

### B. United States v. Hall

In *Hall*, the parolee was faced with hearsay evidence from a non-available declarant. *After* "[b]alancing the *Comito* factors," the court found that the parolee had "little interest in confrontation . . . because [the declarant's out-of-court statements] w[ere] insignificant to the ultimate finding[,]" and were "outweighed by the government's substantial showing of good cause" for failing to produce the declarant at the hearing. *Hall*, 419 F.3d at 989. While the hearsay exception evidence lessened "the importance of [the declarant's out-of-court statements] to the court's ultimate finding," and rendered harmless any error in admitting those out of court statements, *id.* at 986 & n.5, the failure to produce the declarant remained subject to analysis of the Government's good cause explanation, and to full *Comito* balancing.

**[3]** The application of a balancing test to the admission of hearsay evidence in parole revocation hearings is not an open question in this circuit.[4] *See Hall*, 419 F.3d at 986; *Comito*, 177 F.3d at 1170-73; *United States v. Walker*, 117 F.3d 417, 420-21 (9th Cir. 1997); *United States v. Simmons*, 812 F.2d 561, 564 (9th Cir. 1987). *Hall* did not overrule or modify the *Comito* balancing test.

## C.    Hearsay exceptions and *Comito* balancing

**[4]** Because the Federal Rules of Evidence do not apply to parole revocation hearings, *see Walker*, 117 F.3d at 420, evidence falling within enumerated hearsay exceptions is subject to *Comito* balancing. While, in general, hearsay exception evidence is admissible at trial because of assurances of reliability,[5] reliability or "trustworthiness" is included in the *Comito* "right to confrontation" analysis: less reliable hearsay can contribute to more weight placed on a parolee's right to confrontation over the government's good cause. *Comito*, 177 F.3d at 1171-72 ("Because the hearsay evidence was important to the court's finding, and because it involved the least reliable form of hearsay, Comito's interest in asserting his right to confrontation is at its apogee."). Reliability does not result in automatic admissibility: "Simply because hearsay evidence bears some indicia of reliability does not render it admissible." *Hall*, 419 F.3d at 988. Therefore, evidence falling under a hearsay exception does not circumvent the *Comito* balancing test. It remains a part of it as an "indicia of reliability," and subject to good cause analysis.

---

[4]We are aware of the Second Circuit's contrary holding. *See United States v. Williams*, 443 F.3d 35, 45 (2d Cir. 2006). However, as a three-judge panel, and with no intervening Supreme Court or Ninth Circuit precedent, we are bound by this court's holding in *Comito*.

[5]*See* Fed. R. Evid. 803, Advisory Committee Notes ("The present rule proceeds upon the theory that under appropriate circumstances a hearsay statement may possess circumstantial guarantees of trustworthiness sufficient to justify nonproduction of the declarant in person at the trial even though he may be available.").

### D. Due process rights of parolees

**[5]** The *Comito* test does not elevate the due process rights of parolees to those of criminal defendants. Criminal defendants have trial rights, including a jury trial, proof beyond a reasonable doubt, application of the applicable rules of evidence, and Sixth Amendment confrontation rights. Even testimonial hearsay that falls under a "firmly rooted hearsay exception" or bears "particularized guarantees of trustworthiness" may not be admitted against a defendant without confrontation or cross-examination. *Crawford*, 541 U.S. at 60-68. These protections stand in firm contrast to the conditional due process rights of parolees, which can be justifiably denied—and hearsay admitted—if the Government's good cause is sufficient under *Comito*.

**[6]** The dissent is concerned that the admission of hearsay exception evidence against a criminal defendant "is a foregone conclusion" while such evidence would be admissible in a parole revocation hearing once it is subject to a showing of "good cause." Dissenting Op., at 4841. Hearsay evidence that is testimonial in nature, however, regardless of any exceptions, is inadmissible against a criminal defendant under *Crawford*. However, *both* testimonial and non-testimonial hearsay are admissible against a parolee, provided the hearsay fulfills *Comito* balancing. Moreover, the admission of hearsay evidence falling within an exception against a criminal defendant is not a foregone conclusion; all hearsay evidence is subject to Fed. R. Evid. 403 balancing (whether the evidence is more prejudicial than probative). The Federal Rules of Evidence, and such prejudicial/probative weighing, do not govern parole revocation hearings, *see United States v. Walker*, 117 F.3d 417, 421 (9th Cir. 1997), and therefore do not protect parolees as they do criminal defendants.

Raising an argument neither party raised in this appeal, the dissent also contends we have failed to define hearsay. *See* Dissenting Op., at 4840-41. California parole revocation pro-

ceedings, however, are governed by state law whose hearsay definitions would apply. Contrary to the dissent's characterization, we are not "mandating" applicable hearsay law, or attempting to redefine it, *see* Dissenting Op., at 4840, but merely ensuring that state procedures comport with federal due process per the law of this circuit.

**[7]** The district court, therefore, did not err in subjecting the State's parole revocation hearings to the *Comito* balancing requirements.[6] *Comito* balancing remains the framework for confrontation rights in parole revocation hearings, and does not elevate the due process rights of parolees over those of criminal defendants.

## E.    Corroborating hearsay with hearsay

The Special Master recommended, and the district court adopted the ruling, that "[h]earsay *cannot* be used to corroborate proffered hearsay unless it, too, survives a *Comito* balancing test." The district court did not err in this determination.

**[8]** Neither *Comito* nor *Hall* offer a clear rule on whether

---

[6]The dissent finds that our upholding the application of *Comito* balancing to these state parole hearings is a violation of principles of federalism, as no Ninth Circuit cases have previously applied such a procedure to state procedures, but rather only to federal supervised release or probation. *See* Dissenting Op. at 4840. However, the Supreme Court's ruling in *Morrissey*, and this court in *Comito*, imposed "certain minimum due process requirements" for parole revocation, revocation of probation, and revocation of supervised release, necessary to protect a parolee's constitutional right to confrontation. *Comito*, 177 F.3d at 1170, 1172. The district court, in its June 2002 partial grant of summary judgment in favor of Plaintiffs, found that California's parole revocation hearing system violated Plaintiffs' procedural due process rights. *Valdivia*, 206 F. Supp. 2d at 1078. This order was not appealed. There is therefore a demonstrated constitutional violation present in the California parole revocation hearing system, and principles of federalism do not permit a state to violate what this court has already deemed to be a constitutionally-protected right.

other hearsay evidence can be used to corroborate or support the reliability of proffered hearsay in a parole revocation hearing without being subject to a balancing test. The court in *Comito* specifically declined to consider the admissibility of the underlying hearsay. 177 F.3d at 1169 ("While the additional evidence may also be subject in whole or in part to valid objections based on hearsay and Comito's right to confrontation, those challenges are not raised before us."). While the court in *Hall* did not subject the underlying hearsay to any sort of balancing test, it did not articulate a particular rule as to whether or when a balancing test should be employed. *See* 419 F.3d at 987.

We affirm, therefore, not because *Hall* and *Comito* hold that "on balance . . . these courts expect corroboration to come from competent evidence," but because of the Supreme Court's description in *Morrissey* of the due process rights of parolees.

**[9]** The basic question we face here is whether the government should be required to provide good cause for the absence of the declarant in the underlying hearsay statement that it seeks to use as an indicia of reliability. To satisfy due process, *Morrissey* requires the State to demonstrate good cause. The Court in *Morrissey* considered the rights described in its opinion to be a floor—the basic, minimal rights afforded to parolees by due process. *Morrissey*, 408 U.S. at 488-89 ("Our task is limited to deciding the minimum requirements of due process."). Among these rights is "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Id.* at 489. The good cause balancing of *Comito* for all hearsay fits comfortably with *Morrissey*'s basic minimum due process guarantees for parolees. Admitting hearsay without the good cause analysis does not.

The dissent's concern that we have exceeded *Morrissey*'s "minimum requirements," 408 U.S. at 488-89, *see* Dissenting

Op. at 4843, is a concern not with our opinion, but with *Comito* itself, which states:

> Under *Morrissey*, every releasee is guaranteed the right to confront and cross-examine adverse witnesses at a revocation hearing, unless the government shows good cause for not producing the witness. This right to confrontation ensures that a finding of a supervised release violation will be based on verified facts. Accordingly, in determining whether the admission of hearsay evidence violates the releasee's right to confrontation in a particular case, the court must weigh the releasee's interest in his constitutionally guaranteed right to confrontation against the Government's good cause for denying it.

177 F.3d at 1170 (internal citations omitted). While *Comito* could be construed as going beyond the minimal requirements espoused in *Morrissey*, we are not bound to adhere only to minimal requirements; *Comito* is not inconsistent with those requirements, and no intervening precedent has arisen since *Comito*, either in our circuit or in the Supreme Court, to suggest otherwise.[7]

**[10]** In addition, allowing hearsay that does not pass *Comito* balancing to be considered in the determination of a statement's reliability seems contrary to this Circuit's holding in *Hall*. *Hall* did say that "long-standing exceptions to the hearsay rule that meet more demanding requirements for criminal prosecutions *should* satisfy the lesser standard of due process accorded the respondent in a revocation hearing." *Hall*, 419 F.3d at 987 (emphasis added). *Should* satisfy, however, does

---

[7]The dissent suggests our excerpting of *Comito* here to be "inapposite" because "the hearsay at issue was *actually admitted against* the parolee as evidence." *See* Dissenting Op. at 7 (emphasis in original). However, in both *Hall* and *Comito*, the hearsay was admitted *after* application of the *Comito* balancing test. 177 F.3d at 1173; *Hall*, 419 F.3d at 986-87, 989.

not mean "do satisfy." The court in *Hall*, after making this statement, went on to subject Hall's medical records, which fell under the business records exception to the hearsay rule (Fed. R. Evid. 803(6)), to *Comito* balancing, weighing "Hall's interest in excluding hearsay evidence . . . against the government's good cause for not producing [the witness]." *Id*. Thus, following this circuit's example in *Hall*, and the reasoning of *Morrissey* and *Comito*, we believe that hearsay used to corroborate other hearsay remains subject to *Comito* balancing. The process nonetheless remains "flexible enough to consider evidence . . . that would not be admissible in an adversary criminal trial." *Id*. (citing *Morrissey*, 408 U.S. at 489).

The State argues that subjecting all hearsay to this balancing test is too arduous a burden, eliminating the "flexibility" *Morrissey*, *id*., seems to embrace. *Comito* itself, however, allows for the admission of testimonial evidence not normally admissible in criminal trials. While *Crawford* restricts the use of certain unauthenticated evidence, *Crawford*, 541 U.S. at 61, in a parole revocation hearing, under the *Comito* balancing test, testimonial hearsay evidence *is admissible* against a parolee without the testimony of a declarant, provided the government demonstrates the requisite good cause for its inability to produce the declarant.

**[11]** Therefore, subjecting underlying hearsay to the *Comito* balancing test conforms with *Morrissey* and our precedent, and the district court did not err in adopting this recommendation of the Special Master on this record.

### F. *Morrissey* and Other Obligations Imposed on the State

Other obligations imposed on the State by the March 2008 order, including professional training for Deputy Commissioners, do not contravene the Supreme Court's determination that a hearing body need not necessarily be composed of judicial officers or lawyers. *Morrissey,* 408 U.S. at 486. Nor does

the imposed disciplinary system contravene *Morrissey*'s directive that hearing officers remain "neutral and detached." *Id.* at 489.

The March 2008 order not only encourages the neutral, detached behavior envisioned by *Morrissey*, but also increases the experience and training of the officers. Nor does it mandate an entire body filled with judicial officers or lawyers, which was the Court's fear in *Morrissey*. *Id.* at 486 ("The independent officer *need not* be a judicial officer.") (emphasis added).

**[12]** While the State was not found to have violated the Injunction, the Special Master found that the State had not fully complied with its requirements. Where the state has not "fully complied with the court's earlier orders," the district court has "ample authority to go beyond earlier orders." *Hutto v. Finney*, 437 U.S. 678, 687 (1978); *see also Toussaint v. McCarthy*, 801 F.2d 1080, 1087 (9th Cir. 1986) ("a federal court must order effective relief" and a "defendant's history of noncompliance with prior orders is a relevant factor in determining the necessary scope of an effective remedy"). Here, in implementing a disciplinary system, the district court was merely attempting to ensure compliance with the Injunction and was therefore not limited by its earlier orders. The obligations imposed by the district court here, therefore, do not constitute error in contravention of court precedent.

## G.   Dismissal of the State's Objections

**[13]** The district court did not err in dismissing the State's objections to the evidence presented in the Special Master's report. While the State has argued several potential evidentiary errors in its briefs, we address here only those for which the State has provided support as opposed to mere conjecture.

**[14]** Evidentiary rulings are reviewed for abuse of discretion, and should not be reversed unless, more probably than

not, the error tainted the outcome. *Harman*, 211 F.3d at 1175; *Gribben v. United Parcel Serv., Inc.*, 528 F.3d 1166, 1172 (9th Cir. 2008); Fed. R. Evid. 103(a). In addition, we may affirm the district court's decision to admit evidence on any basis in the record, so long as the issue has been briefed. *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1011 (9th Cir. 1995) ("court of appeals may affirm a decision to admit evidence on a different ground than that relied upon by the district court as long as the issue has been fully briefed on appeal, and there is sufficient basis in the record for us to address it" (internal quotation marks omitted)). The Special Master did not improperly use judicial notice, nor rely on inadmissible hearsay to support his findings.

The Special Master did not use judicial notice to bypass the process of authenticating documents on which he relied. Transcripts were submitted as evidence, but the original tapes remained in the State's custody. For the State to challenge the authenticity of transcripts to which they have the original tapes defeats the purpose of the evidentiary rule. Plaintiffs attempted to obtain the tapes from the State; when they were declined, they resorted to transcripts.[8] Plaintiffs were not required to submit the originals for authentication in court, and the State never challenged their authenticity in court, rendering judicial notice possible.[9]

Judicial notice is used to supplant authentication of "adjudicative facts"—"simply the facts of the particular case." Fed.

---

[8]Under Fed. R. Evid. R. 1004(3), the party is not required to present the original in court (here, the recording), "[a]t a time when an original was under the control of the party against whom offered, that party was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and that party does not produce the original at the hearing[.]"

[9]*See* Fed. R. Evid. 201 ("A judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

R. Evid. 201, Advisory Committee Notes. Stated another way, "the adjudicative facts are those to which the law is applied in the process of adjudication. They are the facts that normally go to the jury. They relate to the parties, their activities, their properties, their businesses." *Id.* (citations omitted). The authenticity of these transcripts was not challenged by either party. Thus judicial notice was proper, and the Special Master correctly admitted and relied upon the transcripts.

Additionally, the Special Master's findings were based not on inadmissible hearsay, but rather on observations by employees and observers, statements based in personal knowledge that were not out-of-court statements. For these reasons, we affirm the district court's March 2008 order adopting the Special Master's report and recommendations.

## II.   The March 2009 Order

The district court, in its March 2009 order, denied modification of the Injunction to conform with California's Proposition 9. While the court correctly found the State had not met its burden to show a significant change in circumstances normally necessary for modification under *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992), such a showing may not have been necessary in light of federalism principles. The district court made no express determination that the Injunction's procedures were necessary to remedy federal constitutional violations, and did not expressly find any aspect of the California parole revocation procedures, as modified by Proposition 9, in violation of basic constitutional rights.

**[15]** A district court may refuse to modify a federal injunction in light of a given state law where such a law violates federal law. *See Clark v. Coye*, 60 F.3d 600, 605 (9th Cir. 1995). However, merely finding that a state law conflicts with a federal injunction, such as the court found here, is insufficient to deny modification of the injunction, and "clearly constitute[s] an abuse of discretion." *Id.* ("In the case before us,

Bill 35 was held to be inconsistent with the terms of the injunction, not with the federal law upon which the injunction was based. The district court has never concluded that Bill 35 violates federal law. It is irrelevant whether Bill 35 frustrates the broad purpose of the district court's injunction.").

Further, while the Injunction was put in place to remedy claimed constitutional violations, it is not clear that these procedures were *required* to remedy the violation of basic constitutional rights. The district court made this clear in the hearing prior to issuing the March 2009 order:

> [I]n this case I never found any of the things that now everybody is concerned about, whether they were consistent with the Constitution of the United States or not. . . . . What I found was that the parties had agreed to get rid of this lawsuit. *There clearly were some procedures which were violative of the Federal Constitution*, and they said, "Look, we're going to solve this whole problem, and we, the plaintiffs, will give away some of our constitutional rights in order to gain these other rights." . . . . *It isn't really true* that this Court made a determination that these specific procedures *were required* by the Federal Constitution. The Court said, "You guys are happy, I'm happy."

While these procedures were put in place in an attempt to remedy a claimed constitutional violation, they were not *necessary or required* by the Constitution. There is no indication anywhere in the record that these particular procedures are necessary for the assurance of the due process rights of parolees.

**[16]** This circuit's law is clear: unless a state law is found to violate a federal law, or unless the Injunction is found necessary to remedy a constitutional violation, federalism principles require the reconciliation of the state law and federal

injunctions. *See Keith v. Volpe*, 118 F.3d 1386, 1393-94 (9th Cir. 1997) (finding state law prevailed, and vacating injunction, where no determination made by district court that the injunction was necessary to remedy a constitutional violation); *Clark*, 60 F.3d at 604 ("[T]he scope of federal injunctive relief against an agency of state government must always be narrowly tailored to enforce federal constitutional and statutory law only."). Therefore, we vacate and remand the March 2009 order for the court to reconcile Proposition 9 with the Injunction.

## CONCLUSION

We affirm the district court's March 2008 order, as we are bound by *Comito*. Because the district court made no express determination that any aspect of the California parole revocation procedures, as modified by Proposition 9, violated constitutional rights, or that the Injunction was necessary to remedy a constitutional violation, we vacate and remand the March 2009 order for the district court to make that determination and reconcile the Injunction with California law as expressed in Proposition 9.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**

Each party to bear its own costs on appeal.

---

NOONAN, Circuit Judge, concurring and dissenting:

I concur in Part II of the majority's opinion. A federal court cannot disregard or encroach on state prerogatives unless it must do so to vindicate federal law or the Constitution. For this same reason, however, I dissent from the majority's analysis in Part I. Hearsay evidence that falls within a firmly rooted hearsay exception does not offend any federal right

held by parolees, and we therefore have no authority to impose "*Comito* balancing" when such evidence is proffered in parole revocation hearings conducted by a state. The majority's contrary holding places the Ninth Circuit in conflict with the only other circuit to squarely consider this issue. *See United States v. Williams*, 443 F.3d 35, 45 (2d Cir. 2006). I also dissent because I see no basis to require additional "*Comito* balancing" where the hearsay in question serves only to corroborate the reliability of proffered hearsay evidence and is not actually admitted against the parolee.

## I.

In hearings on the revocation of parole, *Morrissey* instructs that the "minimum requirements of due process" include "the right to confront and cross-examine adverse witnesses." 408 U.S. at 488-89. This right to confrontation is applied through the Due Process Clause of the Fourteenth Amendment. It provides no greater guarantee than that afforded to criminal defendants under the Sixth Amendment. *See, e.g.*, *Gagnon v. Scarpelli*, 411 U.S. 778, 782 n.5 (1973); *Morrissey*, 408 U.S. at 489; *United States v. Simmons*, 812 F.2d 561, 564 (9th Cir. 1987). The Sixth Amendment, in turn, does not enact the hearsay rule, nor is it offended by evidence that falls within a firmly rooted hearsay exception. As the Supreme Court explained:

> We have allowed the admission of statements falling within a firmly rooted hearsay exception since the Court's recognition in *Mattox v. United States*, 156 U.S. 237 (1895), that the Framers of the Sixth Amendment "obviously intended to . . . respec[t]" certain unquestionable rules of evidence in drafting the Confrontation Clause. Justice Brown, writing for the Court in that case, did not question the wisdom of excluding deposition testimony, *ex parte* affidavits and their equivalents. But he reasoned that an unduly strict and "technical" reading of the Clause

would have the effect of excluding other hearsay evidence, such as dying declarations, whose admissibility neither the Framers nor anyone else 100 years later "would have [had] the hardihood . . . to question."

*Lilly v. Virginia*, 527 U.S. 116, 125-26 (1999) (citations omitted) (alterations and ellipses in original); *see Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2539 (2009) (observing that most hearsay exceptions do not implicate a criminal defendant's right to confrontation because they "cover[ ] statements that by their nature [are] not testimonial—for example, business records or statements in furtherance of a conspiracy" (quoting *Crawford v. Washington*, 541 U.S. 36, 56 (2004))).

By requiring "*Comito* balancing" where no federal confrontation right is infringed, the majority recedes from the principles of federalism espoused in Part II of its opinion. It imposes on the state a procedure crafted by the Ninth Circuit that has heretofore applied only to the revocation of federal supervised release or probation, not the revocation of state parole. *See Hall*, 419 F.3d at 982; *Comito*, 177 F.3d at 1167; *United States v. Walker*, 117 F.3d 417, 418-19 (9th Cir. 1997); *United States v. Martin*, 984 F.2d 308, 309 (9th Cir. 1993); *Simmons*, 812 F.2d at 562-63.

The majority requires this procedure whenever the state relies on "hearsay" evidence, yet its opinion does not purport to define this now critical term. In the federal system, the term "hearsay" expressly excludes, *inter alia*, statements by coconspirators or admissions by a party to the proceeding. *See* Fed. R. Evid. 801(d)(1), (2)*; Hall*, 419 F.3d at 986. But under California law, these same statements *are* termed "hearsay" and are admissible only under "hearsay exceptions." *See* Cal. Evid. Code §§ 1200-01, 1220, 1223. Which definition of "hearsay" does the majority mandate in California's parole proceedings? I presume we will be called upon to answer this

question—and others like it—in due course. *Contra Morrissey*, 408 U.S. at 488 ("We cannot write a code of procedure; that is the responsibility of each State.").[1]

By demanding that the state establish "good cause" to rely on business records, excited utterances, and the like, the majority expands the confrontation rights of parolees beyond those held by criminal defendants. *Contra id.* at 489; *Simmons*, 812 F.2d at 564. The majority attempts to justify this expansion by noting that—unlike in criminal trials—the state can always trump parolees' confrontation rights, even if no firmly rooted hearsay exception applies. *See* Maj. Op. 4829. But it is quite likely that most hearsay evidence offered in parole hearings will fall under some firmly rooted hearsay exception. *See generally, e.g.*, *United States v. Wake*, 948 F.2d 1422, 1435 (5th Cir. 1991) ("[T]here are, needless to say, numerous exceptions to hearsay not being admissible."). As a matter of constitutional law, the majority equips parolees to exclude such evidence if the state cannot demonstrate "good cause," yet the admissibility of this same evidence against criminal defendants is a foregone conclusion.[2]

The majority braces its holding by noting that parolees will still lack many of the other rights enjoyed by criminal defendants, such as the right to a jury and proof beyond a reasonable doubt. *See* Maj. Op. 4920. But this rationale is foreign to our jurisprudence. We cannot retool discrete constitutional

---

[1]In my view, the type of "hearsay" evidence that raises federal due process concerns is straightforward. Because the Fourteenth Amendment confers no greater confrontation right than that afforded to criminal defendants, the state must show "good cause" only where it relies on evidence that would violate the Confrontation Clause in a criminal proceeding.

[2]The majority posits that certain rules of evidence, such as Rule 403 of the Federal Rules of Evidence and its state analogues, may help to alleviate this disparity. *See* Maj. Op. 4829. I decline to rely on legislative enactments and the discretion of trial judges to offset the asymmetry that the majority injects into the Constitution.

guarantees so long as the total quantum of "due process" afforded to parolees will not exceed that of criminal defendants. Like parolees, juveniles in delinquency proceedings have no right to a jury trial, *see McKeiver v. Pennsylvania*, 403 U.S. 528, 545 (1971), yet we are not empowered to enhance juveniles' confrontation rights, raise the burden of proof, or demand greater effectiveness from their appointed attorneys.

The majority asserts that its decision is compelled by the "law of this circuit," rejecting the Second Circuit's contrary views in a footnote. Maj. Op. 4826; *id.* at 4828 n.4. Yet our prior caselaw involved federal probationers challenging evidence that would be inadmissable against criminal defendants. These precedents do not dictate our decision in a case involving state parolees disputing evidence "whose admissibility neither the Framers nor anyone else 100 years later 'would have [had] the hardihood . . . to question.' " *Lilly*, 527 U.S. at 126 (alteration and ellipses in original).

Furthermore, our most recent decision in *Hall* strongly supports the approach taken by the Second Circuit. *Compare United States v. Aspinall*, 389 F.3d 332, 344 (2d Cir. 2004) ("[T]he [due-process] balancing analysis need not be made where the proffered out-of-court statement is admissible under an established exception to the hearsay rule."), *with Hall*, 419 F.3d at 987 ("[L]ong-standing exceptions to the hearsay rule . . . should satisfy the lesser standard of due process accorded the respondent in a revocation proceeding."). Indeed, the *Hall* court favorably cited the same line of Second Circuit precedents that the majority today rejects out of hand. *See Hall*, 419 F.3d at 986 (citing *Aspinall*, 389 F.3d at 342). The majority's headlong decision to create a circuit split is both unpersuasive and unnecessary.

## II.

To apply its prescribed "balancing test," the *Comito* court instructed decisionmakers to consider "the accuracy and reli-

ability of the proffered [hearsay] evidence," and advised that the greater the reliability of the proffered evidence, the lesser a respondent's interest "in testing it by exercising his right to confrontation." *See* 177 F.3d at 1171. Today, the majority holds that when hearsay is considered solely to evaluate the reliability of proffered hearsay evidence, it too must be independently subjected to "*Comito* balancing." To support its holding, the majority excerpts at length from our decisions in Comito and *Hall*, yet in each instance the hearsay at issue was *actually admitted against* the parolee as evidence; it was not used solely to assess the reliability of hearsay evidence proffered for admission. *See* Maj. Op. 4832-33. The majority's excerpts are inapposite.

It is well-established, moreover, that trial judges may routinely consider inadmissible evidence to evaluate the competence of evidence actually proffered for admission. *See, e.g.*, Fed. R. Evid. 104(a). No decision by the Supreme Court or the Ninth Circuit has found this practice to contravene the minimum requirements of due process or to require additional procedural safeguards. By requiring such safeguards in parole revocation hearings, the majority departs from Supreme Court precedent and exceeds our limited authority to intervene in the criminal justice system of the fifty states. The majority declares: "[W]e are not bound to adhere only to minimal requirements [of due process]." Maj. Op. 4831. The Supreme Court has stated: "Our task is limited to deciding the minimum requirements of due process." *Morrissey*, 408 U.S. at 488-89.