

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MARK CALVERT, as Liquidating Trustee of the Meridian Investors Trust,

Plaintiff-Appellee,

v.

GEORGE STEVEN KOOSHIAN, AKA George Steven Kooshian,

Defendant-Appellant.

No.   15-35465

D.C. No. 2:12-cv-01594-RAJ

MEMORANDUM*

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Submitted May 15, 2017**
Seattle, Washington

Before: HAWKINS, GOULD, and PAEZ, Circuit Judges.

Defendant-Appellant George Kooshian ("Kooshian") appeals the district court's

order, following a bench trial, awarding bankruptcy trustee Mark Calvert ("Trustee")

---

\*       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*       The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

$781,798.66 as a voidable transfer of profit Kooshian received from debtor Darren Berg's Ponzi scheme.[1] We review the district court's findings of fact for clear error, *FTC v. BurnLounge, Inc.*, 753 F.3d 878, 883 (9th Cir. 2014), its evidentiary rulings for an abuse of discretion, *Valdivia v. Schwarzenegger*, 599 F.3d 984, 988 (9th Cir. 2010), and we affirm.

There was substantial evidence to support the district court's conclusion that Berg was operating a Ponzi scheme, including Berg's own plea agreement. A transfer made "with actual intent to hinder, delay, or defraud" any creditor of the debtor may be avoided by the trustee, 11 U.S.C. § 548(a)(1)(A), and the "mere existence of a Ponzi scheme is sufficient to establish actual intent" to defraud. *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) (internal quotation marks omitted). In his plea agreement, Berg acknowledged creating and operating a series of investment funds purportedly for the purpose of investing in seller-financed real estate contracts, short term loans, real estate, and management fees. He admitted, however, that he actually used the funds for other business ventures and for his personal benefit, and then used

---

[1] A Ponzi scheme is a "financial fraud that induces investment by promising extremely high, risk-free returns, usually in a short time period, from an allegedly legitimate business venture. The fraud consists of funneling proceeds received from new investors to previous investors in the guise of profits from the alleged business venture, thereby cultivating an illusion that a legitimate profit-making business opportunity exists and inducing further investment." *Donell v. Kowell*, 533 F.3d 767 n.2 (9th Cir. 2008) (internal quotation marks omitted).

other investors' funds "to pay off the loans of earlier investors in order to conceal his false statements and continue his scheme to defraud," the quintessential hallmark of a Ponzi scheme. *See id.* at 767 n.2; *see also In re Slatkin*, 525 F.3d 805, 814 (9th Cir. 2008) (debtor's admissions in guilty plea and plea agreement that he operated a Ponzi scheme conclusively established his fraudulent intent). "[O]nce the existence of a Ponzi scheme is established, payments received by investors as purported profits–i.e., funds transferred to the investor that exceed that investor's initial 'investment'–are deemed to be fraudulent transfers as a matter of law." *In re Slatkin*, 525 F.3d at 814.

Kooshian contends that Berg's plea agreement is vague as to when the fraudulent scheme began, and argues that it thus "does not necessarily encompass the dates that Dr. Kooshian received transfers." The plea agreement notes the fraudulent scheme began "at an exact time unknown, but sometime within the last ten years, and continuing until in or around August 2010." However, the Trustee and a forensic financial expert both testified based on their review of the Debtor's financial records that the scheme began as early as 2001 with the first investments to Meridian Fund I, and thus the scheme already existed by the time Kooshian made his first investment in 2004, and when he later received the return of his investment plus profit. The court did not abuse its discretion by admitting the testimony of the Trustee as a percipient

3

witness with personal knowledge of the Debtor's bank records,[2] nor did it abuse its discretion by admitting the opinion of financial expert Randy Sugarman, a certified fraud examiner. Fed. R. Evid. 702, 703.

**AFFIRMED.**

---

[2] Upon appointment, the bankruptcy trustee steps into the shoes of the debtor and becomes the custodian of the debtor's books, documents, records, etc. *See* 11 U.S.C. §§ 521(a)(4), 1108; *In re Benny*, 29 B.R. 754, 761 (N.D. Cal. 1983).