Submitted August 21, reversed and remanded December 18, 2013

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## MARISA ANN HARRIS,
*Defendant-Appellant.*

Washington County Circuit Court
D100514T; A149158

316 P3d 405

Peter Gartlan, Chief Defender, and Lindsey K. Detweiler, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jake J. Hogue, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

This case requires us to determine whether, at a probation revocation hearing, defendant had a federal due process right to confront the lab technician who prepared two urinalysis reports indicating that defendant had consumed alcohol. The state introduced the urinalysis results through the testimony of defendant's probation evaluator. Over defendant's objection, the trial court concluded that the state did not need to produce the lab technician for cross-examination, and it found that defendant had violated her probation. For the following reasons, we reverse and remand.

The facts are not in dispute. Defendant had been sentenced to a term of probation that prohibited her from consuming alcohol. An employee of Evaluation Services—the organization in charge of monitoring defendant's compliance—required her to submit a urine sample. The sample was sent to Sterling Reference Laboratories (Sterling) in Tacoma, Washington. Sterling returned a urinalysis report stating that defendant's sample had tested "positive" for "ethylglucuronide (ETG)," "negative" for nitrite, and "normal" for creatinine and pH. It also contained a "Certification" that consisted of the words "Certified True and Complete," beneath which lay the signature of Ryan Jorgensen, who was identified as an "MS Certifying Scientist." Defendant denied consuming alcohol and asked for a confirmatory test; Sterling retested the same sample and issued an "amended report." Unlike the first, it indicated that the analysis was performed by "High Performance Liquid Chromatography/Tandem Mass Spectrometry." Also unlike the first, it specified that defendant had tested "positive" for "Ethyl Glucuronide" in the amount of "3126 ng/mL" and "Ethyl Sulfate" in the amount of "1815 ng/mL." The second urinalysis report contained the same "Certification" as the first.

The trial court held a hearing to determine whether defendant had violated her probation. At the outset of that hearing, defense counsel announced that defendant would deny the allegation of alcohol consumption. The state's only witness was defendant's probation "evaluator"; she stated that both of the tests indicated alcohol usage. Defense counsel objected to the evaluator's testimony, arguing that the

state was required to produce the lab technician who performed the tests to testify about the results. The trial court immediately agreed to reschedule the hearing to give the state sufficient time to produce the technician. The state declared that two weeks would give it enough time to do so.

Approximately two weeks later, the court held a second hearing. The state began by noting that it had reviewed *State v. Wibbens*, 238 Or App 737, 243 P3d 790 (2010), and concluded that it did not need to produce the lab technician to testify. The court asked defense counsel whether he wished to subpoena the technician; defense counsel replied that he believed it was the state's duty to make the technician available to testify. The court then proceeded to hear the testimony of defendant's probation evaluator. During that testimony, the state moved to admit both of the reports containing the urinalyses results. Defense counsel objected, citing the Fourteenth Amendment to the United States Constitution and *Wibbens*.

Without ruling on defendant's objection, the court asked the evaluator how the chain of custody worked with regard to the urine samples. She stated that an employee of Evaluation Services fills out a form requesting the test, collects the urine sample in a bottle, and places a signed and dated security seal over the bottle, which is then sealed in a bag along with the request form and mailed to Sterling. The request form was admitted into evidence; it included a section in which defendant provided her consent to test the sample for alcohol and an acknowledgment by defendant that it was her urine sample that was submitted. After hearing the evaluator's testimony about the collection procedures, defense counsel argued that defendant was being denied a meaningful opportunity to refute the state's evidence and that the state lacked good cause for not producing the lab technician to testify. The court then overruled the objection.

On cross-examination, the evaluator stated that she was not present at the taking of defendant's sample and that someone else in her office had handled the collection of defendant's sample and its submission to Sterling. She also testified that her assertion that the standard collection

procedure had been adhered to in defendant's case was based on her review of the information contained in the request form. At the first hearing, the evaluator stated that the two tests were "positive for alcohol," but provided no information about how she had derived that conclusion from the information presented in the urinalysis reports.

The court concluded that defendant was in violation of her probation terms. In a subsequent judgment, the court ordered defendant to serve 21 days in jail, extended the duration of her probation, and assessed a fine and attorney fees. This timely appeal followed.

The two urinalysis results and the evaluator's testimony about those results were the only pieces of evidence to support the finding that defendant had consumed alcohol, and it is the admission of that evidence that defendant assigns error to. Defendant's sole contention in this appeal is that the admission of those tests and testimony violated her right to confront adverse witnesses under the Fourteenth Amendment. We review for legal error. *See State v. Johnson*, 221 Or App 394, 400-06, 190 P3d 455, *rev den*, 345 Or 418 (2008) (reviewing admission of hearsay evidence over a defendant's due process objection at a probation revocation proceeding for errors of law).

> "In a probation violation proceeding, a probationer is entitled to certain due process protections, including the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation). Less process is due at a revocation hearing than during a criminal trial, and the trial court at a probation revocation hearing may consider documentary evidence that does not meet usual evidentiary requirements. For example, the trial court in a revocation proceeding may consider, where appropriate, conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence."

*Id.* at 400-01 (citations and internal quotation marks omitted). In this context, due process is a "flexible concept and confrontation may give way where other evidence provides an adequate alternative * * *." *Wibbens*, 238 Or App at 741. Accordingly, this court has adopted a balancing test, "which

weighs the probationer's interest in confrontation against the government's good cause for denying it." *Id.* The factors in that analysis include: "(1) the importance of the evidence to the court's finding; (2) the probationer's opportunity to refute the evidence; (3) the difficulty and expense of obtaining witnesses; and (4) traditional indicia of reliability borne by the evidence." *Johnson*, 221 Or App at 401. The first two factors are employed to assess the strength of a defendant's interest in confrontation, which is then weighed against the state's good cause for not producing the declarant, as measured by the second two factors. *See United States v. Martin*, 984 F2d 308, 310-14 (9th Cir 1993) (conducting analysis). If, on balance, the state's good cause outweighs the defendant's interest in confrontation, then confrontation is not constitutionally required.

We have applied that balancing test on several occasions. In *Johnson*, the defendant's probation terms required that he report to his probation officer, abide by the officer's directions, and keep the officer informed of his current address. 221 Or App at 396. The state sought to revoke the defendant's probation for violations of those terms. When the probation officer did not appear at a revocation hearing, the state offered a sworn affidavit prepared by the officer. The affidavit stated that the defendant had been involved in a domestic altercation with his wife, that he had been instructed to report to the officer and had failed to do so, and that the officer was unaware of the defendant's whereabouts. The state also introduced evidence about the contents of the defendant's probation file, which had been prepared by the probation officer. A probation supervisor testified at the hearing; he stated that he had been informed by a different supervisor that the defendant's probation officer was not available to testify because he was ill that day and that he had been stuck in traffic on the day that the hearing had previously been scheduled.

In analyzing the defendant's due process argument, we first noted that "[w]eighing against admission are the facts that the challenged evidence was important to the state's case, and the state made only a perfunctory showing as to why the probation officer did not appear to testify on two consecutive hearing days." *Id.* at 405. We then

observed that several factors "militate[d] strongly" in favor of admitting the evidence. *Id.* "First, the evidence bore several traditional earmarks of reliability. Not only was the evidence admissible under a well-established exception to the hearsay rule, but it also was cabined in a sworn affidavit that subjected its author to penalty for false swearing." *Id.* We also noted that the relevant facts were not complex and did not involve matters of "opinion, interpretation, or nuance." *Id.* Last, we stated that "perhaps most important here, defendant had a full and fair opportunity to contest the challenged evidence, but he did not meaningfully do so. *** [T]hat omission persuades us that defendant did not suffer constitutionally cognizable prejudice by reason of the admission of the challenged evidence." *Id.* at 405-06.

We next confronted the issue in *Wibbens*, 238 Or App at 737. There, a defendant was accused of violating the terms of his probation by consuming alcohol. The only evidence put forth by the state to establish the violation consisted of a probation officer's testimony that a sheriff's deputy had called him on the phone and told him that the defendant "smelled of alcohol" and "appeared intoxicated." *Id.* at 739. In concluding that the admission of that testimony violated due process, we first noted that the evidence was "indispensable" to the state's case because it was the only evidence relied on by the trial court in concluding that defendant had violated his probation. *Id.* at 743. Second, we explained that the state "did not make even a perfunctory showing of why the declarant *** could not be produced at the hearing," noting that the out-of-court declarant was a "Douglas County Sheriff's Deputy, and the hearing was held in Douglas County Circuit Court. There [was] no basis to infer any excuse for his absence; the difficulty and expense of obtaining the witness was marginal at best." Third, we stated that the hearsay consisted of unsworn oral statements "that bore no characteristics of reliability" and were not "contained in a report, affidavit, or other documentary substitute for live testimony." *Id.* We also noted that the statements were uncorroborated and, unlike in *Johnson*, concerned "matters that are subject to errors of judgment or interpretation." *Id.* at 743. Last, we pointed out that, although he did not present any evidence to contravene the hearsay testimony, the

defendant denied the charge and contested the reliability of the deputy's conclusion. Accordingly, we said that "[w]ithout the deputy's presence * * * [the defendant] did not have a meaningful opportunity to refute the hearsay evidence" and we concluded that defendant's due process rights had been violated by the admission of the evidence. *Id.* at 744.

We reached a similar conclusion in *State v. Terry*, 240 Or App 330, 252 P2d 332 (2011). There, the state sought to revoke the defendant's probation for violation of a no-contact order. At the revocation hearing, the defendant's probation officer testified that he had received a call from the Medford Police Department that the defendant had been involved in a domestic dispute and had admitted that he had violated the no-contact order. No police report concerning the alleged incident was entered into evidence. We held that the defendant's due process rights were violated, because the hearsay assertions were central to the state's case, defendant's ability to refute the evidence was "impaired," the state had not demonstrated why the police officer could not have been called to testify, and the unsworn oral assertions did not bear "adequate characteristics of reliability." *Id.* at 336-37.

Finally, *State v. Monk*, 244 Or App 152, 260 P3d 607 (2011), involved a defendant accused of possessing a controlled substance in violation of his probation. The only evidence of the alleged violation were statements of the defendant's probation officer, who testified that she had received a police report indicating that an officer had searched the defendant and discovered marijuana. *Id.* at 154. The prosecutor indicated that the author of the police report was unavailable because she was in training at the police academy, but did not provide any explanation as to why the officer who had performed the search was unavailable. In concluding that the evidence was admitted in error, we observed that it was essential to the state's case, the defendant did not have a meaningful opportunity to refute the allegations, and the state had not explained why training would prevent the report author from testifying or why the officer who conducted the search was unavailable. *Id.* at 157-59. With regard to the "traditional indicia of reliability borne by the evidence," we stated that the fact that the police report

may have been admissible under a hearsay exception was immaterial because the report itself was never admitted into evidence. *Id.* at 158 (internal quotation marks omitted). We also noted that, although a court may consider "conventional substitutes for live testimony, * * * such permissible substitutes do not include the testimony of a witness lacking personal knowledge of an alleged probation violation who merely has read about the violation in an affidavit, deposition, or other document that has not been admitted into evidence." *Id.* (internal quotation marks omitted).

With the foregoing cases in mind, we apply the four-factor test from *Johnson*, beginning with the importance of the evidence in question. We weigh this factor heavily in favor of defendant's position because, as in *Wibbens*, *Terry*, and *Monk*, the challenged evidence was essential to the state's case; the only pieces of evidence establishing that defendant consumed alcohol were the two reports and the evaluator's statements about the contents of those reports.

Next, we consider defendant's ability to refute the challenged hearsay testimony without the declarant present for cross-examination. It was defendant's position at the revocation proceeding that she had not consumed alcohol; the urinalysis results indicated otherwise. Thus, as defense counsel argued at the hearing, there was no other way to meaningfully challenge the results indicated by the reports other than by examining the technician who had performed them. It is true that defendant's probation evaluator testified generally about the chain of custody procedures employed by Evaluation Services—and, thus, that defendant had the opportunity to attack the validity of the test results on that limited ground—but defendant had no opportunity to inquire into the testing procedures employed by Sterling or to otherwise dispute the accuracy of what was stated in the test results. In short, defendant was denied any "meaningful opportunity to refute the hearsay evidence." *Wibbens*, 238 Or App at 744. Because the challenged evidence was the *sine qua non* of the state's case and because defendant was not given any meaningful chance to refute the accuracy of that evidence, defendant's interest in confrontation under the due process clause was very substantial.

We next assess the level of good cause the state had for not confronting defendant with the lab technician, beginning with the difficulty or expense in securing his testimony. As noted, the testing was performed at a private lab in Tacoma, Washington.[1] At the second revocation hearing, the court considered the process of subpoenaing an out-of-state witness and found that "[t]here's certainly a lot of difficulty in bringing [the lab technician] in to have them testify * * *." Although we abide by the trial court's finding that there would be "a lot of difficulty" with *subpoenaing* an out-of-state lab technician to testify about urinalysis results, we do not assign much importance to the fact of that difficulty. That is because the state never attempted to explain—beyond eliciting the mere fact that the lab was located in Tacoma—why it would be difficult to procure the technician's testimony through means other than a subpoena. The state's only assertion in that regard was that it had decided, under *Wibbens,* that it was not required to make the lab technician available to testify, despite the fact that the state had been given approximately two weeks for the express purpose of doing just that. We also note that it was the state that sent the samples to a lab in Tacoma; the state did not submit any evidence to suggest the unavailability of a more-proximate, in-state lab. Thus, we conclude that the difficulty or expense involved in obtaining the witness's testimony does not weigh heavily in the state's favor.

The other factor in assessing the state's good cause is the traditional indicia of reliability borne by the evidence. On that point, the state emphasizes several facts, among them that defendant acknowledged, by virtue of signing the testing request form, that it was her sample that was tested. The state also points to the trial court's finding that the tests appeared, from the information contained on the test results themselves, to have been conducted in "a normal way." Additionally, the state urges that there is no evidence that the lab had any interest in reaching a particular result, that the test results were not prepared "in anticipation of litigation," and that the information in the reports did not

---

[1] Information contained on the testing forms indicates that Sterling is a private entity.

concern "matters that are subject to errors of judgment or interpretation[,]" as was the case in *Wibbens*. *Id.* at 743.

Defendant counters that the test results would not be admissible as a business record under OEC 803(6).[2] Defendant also emphasizes that there is no evidence that corroborates the urinalysis reports.

As an initial point, whether the challenged evidence falls within an exception to the hearsay rule is not dispositive for purposes of our analysis, although that may be a relevant factor. *See Johnson*, 221 Or App at 401 ("[T]he trial court at a probation revocation hearing may consider documentary evidence that does not meet usual evidentiary requirements."). Moreover, we have acknowledged that there are instances where it may be appropriate for a trial court to admit "conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence." *Wibbens*, 238 Or App at 741 (internal quotation marks omitted).

We do assign some weight to the reliability of the test results. We recognize that they appear to be "the regular reports of a company whose business it is to conduct such tests, and which expects its clients to act on the basis of its reports." *United States v. Bell*, 785 F2d 640, 643 (8th Cir 1986). Additionally, the state submitted evidence that several states and federal agencies have accredited Sterling to perform controlled-substance and alcohol testing.[3]

Several other factors cut against the reliability of the urinalyses. First, although the reports were apparently signed by the technician beneath the words "Certified True

---

[2] OEC 803(6) provides that the following items are admissible hearsay:

"A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method of circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this subsection includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

[3] Oregon was not listed among the states that have done so.

and Complete," it is far from apparent that this form of attestation—apparently done in Washington and in the routine course of the technician's employment—constituted "a sworn affidavit that subjected its author to penalty for false swearing." *Johnson*, 221 Or App at 405; *see State v. Carr*, 319 Or 408, 877 P2d 1192 (1994) (whether a statement is an "oath" or "affirmation" such that it is a "sworn statement" for purpose of criminal perjury statute depends on whether the adoption of the statement was "made with sufficient formality to impress on the person the seriousness of his or her act"). Second, although the acts of chemically examining urine, interpreting the results, and expressing those results may not necessarily involve matters of "opinion," those acts do, it is fair to conclude, involve "matters that are subject to errors of judgment or interpretation." *Wibbens*, 238 Or App at 743. That is to say, an out-of-court statement that defendant tested "positive" for "ethylglucuronide" does nothing to establish either that a reliable scientific testing process was observed or that the results obtained therefrom were accurately recorded.[4] Next, the information in the results was not corroborated by any other source; the state offered no evidence that tended to show that urinalysis tests of the types performed are inherently reliable. Finally, the state points to several federal cases that have upheld the admission of urinalysis reports in probation or parole revocation hearings based on their indicia of reliability; those cases, however, are each distinguishable for the reasons stated in *Martin*, 984 F2d at 313.[5]

---

[4] We express no opinion on whether the inclusion of an affidavit of the lab director or lab technician would have constituted sufficient good cause for not making the technician available for cross-examination.

[5] Specifically, the state cites *United States v. Kindred*, 918 F2d 485 (5th Cir 1990); *United States v. Burton*, 866 F2d 1057 (8th Cir), *cert den*, 490 US 1110 (1989); and *United States v. Penn*, 721 F2d 762 (11th Cir 1983). As the Ninth Circuit stated, in an explanation that is applicable to the present case:

"Each of these cases is distinguishable. For example, in *Kindred* and *Penn,* the defendants 'did not contest the allegations of drug use or the accuracy of the urinalysis test.' *Kindred*, 918 F2d at 487. Here, [defendant] denies [alcohol] use and has a correspondingly greater interest in the opportunity to refute the laboratory reports. * * * In *Burton*, the government supported the urinalysis results with an affidavit from the director of the laboratory. 866 F2d at 1058. As we note above, here the government introduced nothing regarding the laboratory procedures. In *Bell*, there was separate evidence corroborating the defendant's use of marijuana, including an arrest for

Thus, although there are some indicia of reliability in the urinalysis results, we conclude that, even when considered with the purported difficulty the state faced in securing the testimony of the out-of-state technician, those indicia are not sufficient to overcome defendant's substantial interest in confrontation. Defendant had no effective way to challenge the only evidence that was presented against her. The admission of the urinalysis reports was error, as was the admission of the probation evaluator's testimony about the contents of those reports.

Reversed and remanded.

---

possession of marijuana and narcotic paraphernalia. *See* 785 F2d at 642. In this case, the urinalyses constitute the only evidence of [alcohol] use ***."

*Martin,* 984 F2d at 313.