Submitted July 16, 2020, affirmed July 28, petition for review allowed
November 24, 2021 (368 Or 787)
See later issue Oregon Reports

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DEANGELO FRANKLIN MARTIN,
*Defendant-Appellant.*

Multnomah County Circuit Court
18CR25299, 18CR31500;
A169801 (Control), A169803

496 P3d 1077

Defendant appeals from a judgment that he violated the conditions of his probation. On appeal, he argues that the trial court violated his due process right to confront the witnesses against him by admitting the victim's out-of-court statements made during a 9-1-1 call without good cause for why the victim was not called as a witness during the hearing. In response, the state argues that, regardless of whether there was good cause for not calling the victim during the hearing, her statements were admissible because they were excited utterances, a firmly rooted exception to the hearsay rule. *Held*: The trial court did not err in admitting the victim's statements. When a statement qualifies for a firmly rooted hearsay exception, its admission does not violate the due process clause because adversarial testing is not expected to add to its reliability. Accordingly, requiring good cause for a witness's unavailability will not meaningfully contribute to the goal of ensuring reliability.

Affirmed.

Shelley D. Russell, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stacy M. Du Clos, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Daniel Norris, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

James, J., dissenting.

**KAMINS, J.**

Defendant appeals from a judgment that he violated the conditions of his probation. On appeal, he challenges the trial court's admission and consideration of out-of-court statements of the victim, who did not testify at the hearing. Because the statements were admissible pursuant to a "firmly rooted" hearsay exception, we affirm.

Defendant was previously convicted of several domestic violence crimes committed against his girlfriend, MK. Part of his sentence for those crimes included 36 months of supervised probation, which included a condition that he does not contact MK. Despite this condition, defendant went to MK's house and chased her down the street as she tried to evade him. During the chase, MK managed to call 9-1-1 and described what was occurring to the dispatcher.

The trial court held a hearing to determine whether defendant violated the conditions of his probation, including the condition that he does not contact MK.[1] During that hearing, the state submitted a recording of the 9-1-1 call as proof of the violation. The state informed the court that it was unable to locate MK in time for the hearing, so she did not testify. Defendant objected to the admission of the 9-1-1 recording, arguing that it violated his right to confront witnesses under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The trial court concluded that the admission of the recording complied with the requirements to admit an out-of-court statement in a probation revocation hearing. Defendant challenges that decision on appeal.

We review whether the admission of evidence at a probation revocation hearing violates a defendant's right to confront adverse witnesses for errors of law. *State v. Harris*, 260 Or App 154, 157, 316 P3d 405 (2013).

A defendant is not entitled to "the full panoply of rights" during a probation revocation hearing that he would be due during a criminal prosecution. *Morrissey v. Brewer*,

---

[1] Defendant was also charged with a probation violation for failing to report to his probation officer, which he conceded to the trial court.

408 US 471, 480, 92 S Ct 2593, 33 L Ed 2d 484 (1972).[2]
Rather, the probation revocation process is "flexible enough
to consider evidence *** that would not be admissible in
an adversary criminal trial." *Id.* Because a defendant in
a probation revocation proceeding has already been con-
victed of a crime, his freedom is not a matter of right, but
rather extended to him as a matter of discretion. *Barker v.
Ireland*, 238 Or 1, 4, 392 P2d 769 (1964). As a result, a defen-
dant during a probation revocation hearing has no Sixth
Amendment right to confront witnesses. *State v. Gonzalez*,
212 Or App 1, 5, 157 P3d 266 (2007). Instead, that defendant
has a more limited right under the Due Process Clause "to
confront and cross-examine adverse witnesses (unless the
hearing officer specifically finds good cause for not allowing
confrontation)." *Morrissey*, 408 US at 489.

Here, the state contends that there is good cause for
admitting MK's testimony without confrontation because
it would have been admissible at trial as an excited utter-
ance under OEC 803(2)—a "firmly rooted" exception to the
hearsay rule. *See State v. Moen*, 309 Or 45, 65, 786 P2d
111 (1990) ("The excited utterance exception is a firmly
rooted traditional hearsay exception."). In the state's view,
the inherent reliability of a statement admissible pursuant
to a firmly rooted exception is sufficient to satisfy the due
process concerns that would otherwise require confronta-
tion. To evaluate that argument, we must examine both the
requirements of due process and the theory of firmly rooted
hearsay exceptions.

The fundamental requirement of the Due Process
Clause "is the opportunity to be heard at a meaningful time
and in a meaningful manner." *Mathews v. Eldridge*, 424 US
319, 333, 96 S Ct 893, 47 L Ed 2d 18 (1976) (internal quota-
tion marks omitted). In the context of defendant's right to
confront witnesses, this means a meaningful opportunity
to test the veracity of the evidence via cross examination to
ensure that any revocation of probation is based on "verified

---

[2] Although *Morrissey* was concerned with parole revocation proceedings, the
Supreme Court recognized that the same protections apply to probation revoca-
tion proceedings in *Gagnon v. Scarpelli*, 411 US 778, 782, 93 S Ct 1756, 36 L Ed
2d 656 (1973).

facts." *See Morrissey*, 408 US at 484. However, due process is flexible; the protections it affords are responsive to the needs of the situation. *Jennings v. Rodriguez*, 583 US ___, ___, 138 S Ct 830, 852, 200 L Ed 2d 122 (2018). "It requires minimum procedural safeguards, depending on the nature of the interests involved and a weighing of costs and benefits in terms of the risks of erroneous decisionmaking in the generality of cases." *Trujillo v. Pacific Safety Supply*, 181 Or App 302, 309-10, 45 P3d 1017 (2002), *aff'd*, 336 Or 349, 84 P3d 119 (2004). In situations where further procedural safeguards would be expected to add little, if anything, to the reliability of the factfinding process, due process does not require that courts impose them. *Id*. at 309. Notably, because due process protections are flexible and circumstance-dependent, the Supreme Court has explained that they are not meant to equate to the protections that a criminal defendant is entitled to under the Sixth Amendment at trial. *Morrissey*, 408 US at 489.

Consistent with those principles, we outlined a four-factor balancing test for determining whether "good cause" exists for denying confrontation during a probation revocation hearing in *State v. Johnson*, 221 Or App 394, 401, 190 P3d 455 (2008): "(1) the importance of the evidence to the court's finding; (2) the probationer's opportunity to refute the evidence; (3) the difficulty and expense of obtaining witnesses; and (4) traditional indicia of reliability borne by the evidence." The first two factors assess the strength of a defendant's interest in confrontation, which is then weighed against the state's good cause for not producing the declarant, as measured by the second two factors. *Harris*, 260 Or App at 158. "If, on balance, the state's good cause outweighs the defendant's interest in confrontation, then confrontation is not constitutionally required." *Id*. Applying the balancing test in *Johnson*, we concluded that a probation officer's sworn affidavit averring that defendant had failed to comply with the officer's directives was admissible without confrontation. 221 Or App at 406. Although two factors weighed in defendant's favor—that the evidence was important and there was only a "perfunctory showing" as to why the probation officer was not called as a witness—the evidence bore substantial earmarks of reliability, concerned

only relatively simple matters, and defendant did not meaningfully contest it. *Id*. at 405.

In *Johnson*, however, we also left open the question of whether evidence that satisfies a "well-established exception to the hearsay rule, might, standing alone, satisfy due-process-based confrontation demands" without a need for balancing. *Id*. at 403-04. The concept of firmly rooted exceptions traces its roots back to the now-defunct framework for evaluating confrontation challenges under the Sixth Amendment in *Ohio v. Roberts*, 448 US 56, 66, 100 S Ct 2531, 65 L Ed 2d 597 (1980), *abrogated by Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004). Under *Roberts*, the theory went that there are certain firmly rooted hearsay exceptions that by their nature are so inherently reliable "that admission of virtually any evidence within them comports with the substance of the [Confrontation Clause]." *Id*. The exception contemplated by *Johnson* would thus allow the admission of statements under the Due Process Clause that, by their nature, are so inherently reliable that they would satisfy the Sixth Amendment's Confrontation Clause at trial.

Such an exception makes sense. A statement qualifying for a firmly rooted hearsay exception is already considered "so trustworthy that adversarial testing can be expected to add little to its reliability." *White v. Illinois*, 502 US 346, 357, 112 S Ct 736, 116 L Ed 2d 848 (1992). And, even among firmly rooted exceptions, excited utterances are a "special breed." *People v. Stanphill*, 170 Cal App 4th 61, 81, 87 Cal Rptr 3d 643, 657 (2009). The rationale behind the excited utterance exception—that statements made under the stress of an exciting event while the speaker lacks the presence of mind to act in his or her own self-interest are especially reliable—has proven so strong that the exception has existed for over two centuries. *White*, 502 US at 355 n 8 (the excited utterance exception is "at least two centuries old" but "may date to the late 17th century" and, as of 1992, "is currently recognized *** in nearly four-fifths of the States"). In fact, *Wigmore* explains, such statements are likely even better than live testimony because it is not possible to reproduce the same conditions in the courtroom that

give rise to their reliability under the exception. John Henry Wigmore, 6 *Evidence* § 1748 (Chadbourn rev 1976) (a statement made under the stress of an exciting event is "better than is likely to be obtained from the same person upon the stand").

Under these circumstances, the due process concerns which ordinarily favor confrontation—and thus *Johnson* balancing—are not present. If cross examination does not increase the reliability of a statement admitted pursuant to a firmly rooted hearsay exception, then, by definition, allowing confrontation would not provide defendant a meaningful opportunity to test the veracity of the evidence for purposes of due process. *See Morrissey*, 408 US at 484 (due process requires a meaningful opportunity "to assure that the finding of a parole violation will be based on verified facts"). Instead, the inimitable circumstances which give rise to the reliability of the statement in the first place provide defendant the assurances of veracity necessary to satisfy due process concerns. Moreover, even if some value were still to be gained by allowing cross examination, the fact remains that "the Due Process Clause simply does not require the best method for discovering the truth." *Trujillo*, 181 Or App at 309 (internal quotation marks omitted). It requires only "minimum procedural safeguards, adapted to the particular characteristics of [the situation]." *Goldberg v. Kelly*, 397 US 254, 267, 90 S Ct 1011, 25 L Ed 2d 287 (1970). Accordingly, we conclude that, when a statement is admitted pursuant to a hearsay exception with firmly rooted reliability, the requirements of due process are satisfied.

Notably, we are far from alone in that conclusion. A number of other courts have held that the requirements of due process are automatically satisfied when the statement at issue is admissible pursuant to a firmly rooted hearsay exception. *United States v. Jones*, 299 F3d 103, 113-14 (2d Cir 2002); *State v. Giovanni P.*, 155 Conn App 322, 335-36, 110 A3d 442, 452-53 (2015); *State v. James*, 797 A2d 732, 736-37 (Me 2002); *Bailey v. State*, 327 Md 689, 698-99, 612 A2d 288, 292 (1992); *Commonwealth v. Durling*, 407 Mass 108, 117-18, 551 NE2d 1193, 1198-99 (1990); *State v. Nez*, 130 Idaho 950, 955, 950 P2d 1289, 1294 (Ct App 1997); *Hampton*

*v. State*, 203 P3d 179, 186 (Okla Crim App 2009); *see also State ex rel. Simpson v. Schwarz*, 250 Wis 2d 214, 229, 640 NW2d 527, 535 (Ct App 2001) (holding that a statement admitted pursuant to any of the hearsay exceptions in the state's rules of evidence is sufficiently reliable to satisfy the defendant's confrontation rights); *Stanphill*, 170 Cal App 4th at 81 (statements qualifying for "spontaneous declaration" exception to hearsay rule are admissible without balancing because of their inherent reliability).

Our home circuit is the only federal court of appeals to have expressly rejected such an exception.[3] *Valdivia v. Schwarzenegger*, 599 F3d 984, 990 (9th Cir 2010). In *Valdivia*, the Ninth Circuit explained that a statement falling within a firmly rooted hearsay exception is not necessarily admissible because reliability is but one factor to be considered under the balancing test. *Id.* at 990. The dissent pointed out that requiring the state to demonstrate good cause for admitting such evidence without confrontation elevates a defendant's rights in a probation revocation proceeding beyond those of a defendant during a criminal prosecution where a showing of good cause has never been necessary. *Id.* at 997. The majority responded that a defendant in a full criminal prosecution still retains a number of other rights that a probation revocation defendant does not, "including a jury trial, proof beyond a reasonable doubt, application of the applicable rules of evidence, and Sixth Amendment confrontation rights." *Id.* at 990.

We reject the *Valdivia* majority's reasoning. Although the reliability of a statement might appear to be just a single factor in the balancing test, it is the primary focus of a defendant's due process confrontation right and the nexus between all of the factors in the analysis. *See Morrissey*, 408 US at 484 (Due process requires "an informal hearing structured to assure that the finding of a parole violation will be based on verified facts"); *Heller v. Doe*, 509 US 312, 332,

---

[3] "[W]e are not bound by decisions of the Ninth Circuit—or any other federal circuit—even on questions of federal law." *State v. Ward*, 367 Or 188, 197, 475 P3d 420 (2020). Although we consider decisions by all lower federal courts, including the Ninth Circuit, for their persuasive effect, we employ an independent analysis to reach our own conclusions. *Wolfe v. Brown*, 294 Or App 800, 813, 432 P3d 1121 (2018).

113 S Ct 2637, 125 L Ed 2d 257 (1993) ("[T]he Due Process Clause [protects] the interest of a person subject to governmental action * * * in the accurate determination of the matters before the court."). Indeed, "the purpose of applying due process protections to probation revocation hearings in the first place is to vindicate and protect a criminal defendant's cognizable interest in not having [probation] revoked because of erroneous information." *People v. Gray*, 63 Cal App 5th 947, 954, 278 Cal Rptr 3d 291, 298 (2021) (recognizing that "[d]ue process is about reliability; the Confrontation Clause, confrontation").

Accordingly, when the unique circumstances surrounding the making of a statement admissible pursuant to a firmly rooted hearsay exception provide assurances of reliability in other ways, it does not meaningfully serve the concerns of due process to subject that statement to confrontation. Doing so does not provide a defendant with any more meaningful of an opportunity to test its reliability. *See Roberts*, 448 US at 65 (statements admitted pursuant to a firmly rooted hearsay exception are "marked with such trustworthiness that 'there is no material departure from the reason of the general rule.'" (quoting *Snyder v. Massachusetts*, 291 US 97, 54 S Ct 330, 78 L Ed 674 (1934), *overruled on other grounds*, *Malloy v. Hogan*, 378 US 1, 84 S Ct 1489, 12 L Ed 2d 653 (1964))).

That conclusion is consistent with the Supreme Court's admonition that the rights afforded to a defendant in a probation revocation proceeding under the Due Process Clause are not equivalent to those of a defendant in a criminal prosecution "in any sense." *Morrissey*, 408 US at 489. Applying *Johnson* balancing to statements that qualify for a firmly rooted hearsay exception would require the state to demonstrate good cause in every case for the admission of the statements—something it has never been required to show under any of the Sixth Amendment's more rigorous standards at trial. *See Roberts*, 448 US at 66 (statements admissible without confrontation if offered pursuant to a firmly rooted hearsay exception); *Crawford*, 541 US at 68 (statements admissible without confrontation if nontestimonial); *see also Davis v. Washington*, 547 US 813, 827-28 126 S Ct 2266, 165 L Ed 2d 224 (2006) (9-1-1 call seeking

aid during an ongoing emergency was nontestimonial and therefore admissible without confrontation).[4]

Against that backdrop, we turn to the case at hand. Here, the state argues, and defendant does not dispute, that MK's statements would be admissible at trial as excited utterances under OEC 803(2). Because the excited utterance exception is firmly rooted—and therefore it would not serve the interests of due process to subject MK's statements to confrontation—we conclude that the statements are admissible regardless of the outcome of the balancing test. The trial court did not err in admitting MK's statements.

Affirmed.

**JAMES, J.,** dissenting.

In *Morrissey v. Brewer*, the United States Supreme Court announced that persons on parole have a Fourteenth Amendment due process right "to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." 408 US 471, 489, 92 S Ct 2593, 33 L Ed 2d 484 (1972). That right was extended to probation in *Gagnon v. Scarpelli*, 411 US 778, 783, 93 S Ct 1756, 36 L Ed 2d 656 (1973). Subsequent to *Morrissey* and *Gagnon*, a plethora of courts have held that due process confrontation involves "balancing the [releasee's] right to confrontation against the Government's good cause for denying it." *United States v. Martin*, 984 F2d 308, 310 (9th Cir 1993) (brackets in original); *see also United States v. Kindred*, 918 F2d 485, 486-87 (5th Cir 1990) ("[C]ourts considering the admissibility of hearsay in revocation proceedings have adopted an approach which balances the parolee's interest in confronting a particular witness against the government's good cause for denying it."); *United States v. Bell*, 785 F2d 640, 642 (8th Cir 1986) ("These decisions indicate that the trial court in a probation-revocation proceeding must balance the probationer's right to confront a witness against the grounds asserted by the government for not requiring confrontation."); *United States v. Penn*, 721 F2d

_____

[4] In contrast to the result in *Johnson*, under the current Sixth Amendment confrontation framework, a probation officer's affidavit averring that defendant had failed to comply with the officer's directives would be a testimonial statement inadmissible without confrontation.

762, 764 (11th Cir 1983) (Admission of hearsay must "balance the probationer's right to confront and cross-examine witnesses against any good cause asserted by the government for not allowing confrontation").

In *United States v. Walker*, the Ninth Circuit elaborated on factors to consider in conducting the balancing between a probationer's right to confront, and the good cause asserted by the government for not allowing confrontation.

> "The defendant's right to confrontation is weighed under the specific circumstances presented. *** In conducting the balancing test, the trial court may consider the importance of the evidence to the court's finding, the releasee's opportunity to refute the evidence, and the consequences of the court's finding. *** The trial court might also consider the '"difficulty and expense of procuring witnesses,"' *Martin*, 984 F2d at 312 (quoting *Gagnon*, 411 US at 783 n 5), and the '"traditional indicia of reliability" borne by the evidence[.]' *Martin*, 984 F2d at 312 (quoting *United States v. Simmons*, 812 F2d 561, 564 (9th Cir 1987))."

117 F3d 417, 420 (9th Cir), *cert den*, 522 US 961 (1997) (citation omitted).

We first applied the Ninth Circuit's formulation in *State v. Johnson*, noting,

> "In the absence of a more clearly useful standard and because the parties have framed their arguments consistently with it, we apply the Ninth Circuit's balancing test to the record in this case to determine whether the admission of the challenged evidence violated defendant's due process right to confrontation. That test has the advantage of serving administrative flexibility, one of the primary goals of the revocation proceedings jurisprudence; it recognizes that well-established hearsay exceptions play an important role by increasing reliability and reducing the weight of the probationer's interest in the balance, and it helps ensure that revocation decisions are based on verified facts, while at the same time emphasizing the pragmatic factor of whether the challenged evidence was seriously controverted."

221 Or App 394, 404, 190 P3d 455, *rev den*, 345 Or 418 (2008).

Ultimately, we used the following four-factor test derived from *Walker*:

"Relevant factors in the balancing process include (1) the importance of the evidence to the court's finding; (2) the probationer's opportunity to refute the evidence; (3) the difficulty and expense of obtaining witnesses; and (4) traditional indicia of reliability borne by the evidence."

*Johnson*, 221 Or App at 401.

Two years later, in *State v. Wibbens*, we formally adopted those four factors, and the balancing test, as Oregon's construction of due process confrontation:

"In order to determine whether admission of hearsay evidence at a probation revocation proceeding violates a probationer's right to confrontation, we have adopted the Ninth Circuit's balancing approach, which weighs the probationer's interest in confrontation against the government's good cause for denying it. *** The relevant factors in that analysis include '(1) the importance of the evidence to the court's finding; (2) the probationer's opportunity to refute the evidence; (3) the difficulty and expense of obtaining witnesses; and (4) traditional indicia of reliability borne by the evidence.'"

238 Or App 737, 741-42, 243 P3d 790 (2010) (citation omitted).

In this case, the trial court applied the *Johnson* and *Wibbens* four-factor balancing test. Defendant appealed, and, understandably, argues the four-factor balancing test. The state, in response, also argues the four-factor balancing test, but simultaneously invites us to announce that, when the evidence involved is a firmly rooted hearsay exception, no balancing is required at all. By my reading, the state invites us to effectively overrule *Johnson* and *Wibbens*, and the majority accepts the invitation. For the majority, the four-factor test is really only one factor—traditional indicia of reliability; nothing else matters, and axiomatically, there is no balancing. Because firmly rooted hearsay exceptions are traditionally reliable, there is no need to consider the difficulty or expense of obtaining the witness, or the importance of the evidence, or how admitting the hearsay will hamstring any meaningful opportunity to refute the evidence.

In so ruling, the majority places Oregon out of step with the Ninth Circuit on an interpretation of a federal constitutional right. While we certainly can, and sometimes do, differ from the Ninth Circuit, when the issue is a federal constitutional right, it should at least give us pause when we differ from the federal courts. As the Ninth Circuit noted in rejecting the invitation the majority accepts here:

> "Reliability does not result in automatic admissibility: 'Simply because hearsay evidence bears some indicia of reliability does not render it admissible.' *United States v. Hall*, 419 F3d 980, 988 (9th Cir 2005). Therefore, evidence falling under a hearsay exception does not circumvent the *Comito* balancing test.[1] It remains a part of it as an 'indicia of reliability,' and subject to good cause analysis."

*Valdivia v. Schwarzenegger*, 599 F3d 984, 990 (9th Cir 2010), *cert den*, 562 US 1271 (2011).

I agree with the reasoning of *Valdivia* and would take the same course for Oregon. The consequence of the majority is that *Johnson* and *Wibbens* balancing is no balancing at all. When a hearsay exception could apply, no matter how critical to the state's case, and even when the witness is just down the hall in the prosecutor's office, none of that will be considered, because no balancing is to be done. This is, in my view, too narrow a formulation of due process.

*Valdivia* recognizes that Due Process confrontation, coming in the context of a probation hearing—where the prophylactic protections of the Sixth Amendment are not directly applicable—serves a purpose beyond the simple search for reliability. The Sixth Amendment's Confrontation Clause appears in the context of a criminal defendant's corresponding right "to have compulsory process for obtaining witnesses in his favor," among other rights. Due Process confrontation is a part of a broader inquiry, and the admission of hearsay is evaluated through a wider lens that combines notions of confrontation with a probationer's ability to obtain and present opposing evidence. *See Johnson*, 221 Or App at 401 (considering "the probationer's opportunity to

---

[1] *United States v. Comito*, 177 F3d 1166, 1170-71 (9th Cir 1999).

refute the evidence"). As the United States Supreme Court has noted,

> "The phrase [due process of law] formulates a concept less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights. Its application is less a matter of rule. Asserted denial is to be tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial."

*Cty. of Sacramento v. Lewis*, 523 US 833, 850, 118 S Ct 1708, 140 L Ed 2d 1043 (1998) (quoting *Betts v. Brady*, 316 US 455, 462, 62 S Ct 1252, 86 L Ed 1595 (1942)) (brackets in *Lewis*).

The majority eschews a totality consideration, replacing it with a uniform rule that, by its nature, can never ensure the case-by-case fairness to which Due Process aspires. Consider the following hypothetical: a defendant is on probation, and a condition of her probation is no contact with her ex-husband. Defendant's probation officer alleges a probation violation based on defendant coming to the ex-husband's house one evening. To support that allegation, the state offers the husband's statement on the night of the incident, offered to police, and qualifying as an excited utterance under OEC 803(2) that the wife "had come to the house and they had a fight." Yet, if husband were to be examined by opposing counsel, husband would have admitted that wife came to the house because husband called her and told her he was going to hurt the children.

Under the majority, that information would never come to light, despite the fact that it is critical information to any court considering a discretionary choice of whether to revoke probation. The state would offer husband's singular hearsay statement and likely obtain a probation revocation with no balancing of the other factors that might consider whether cross-examination of husband is required for Due Process. And this is the crux of why Due Process is more than just the narrow concern for reliability. Confrontation and cross-examination are certainly a vehicle to test reliability,

but they also serve to ferret out *omission*. Sometimes even when what a witness affirmatively says is reliable, what that witness has not said alters the context and tells the true story. Only defendant has the motive to expose the omission. It is confrontation, not evidentiary reliability, that, in some instances, provides the "substantial protection against ill-considered revocation" that Due Process demands. *Gagnon*, 411 US at 786. Accordingly, denying the defendant the opportunity to do that cannot comport with principles of Due Process fairness without at least balancing the factors at play and considering, under a totality of the circumstances, whether confrontation is necessary under the facts of the specific case.

I respectfully dissent.