Argued and submitted May 3; decision of Court of Appeals and judgment of circuit court affirmed December 30, 2022

STATE OF OREGON,
*Respondent on Review,*

*v.*

DEANGELO FRANKLIN MARTIN,
*Petitioner on Review.*

(CC 18CR25299, 18CR31500)
(CA A169801 (Control), A169803)
(SC S068859)

522 P3d 841

In a probation revocation hearing, the state sought to introduce a recording of the victim's call to 9-1-1 to show that defendant violated a no-contact condition of probation. Defendant objected, citing his right to confrontation under the Due Process Clause of the Fourteenth Amendment. The trial court balanced defendant's interest in confrontation against the state's showing of good cause and ruled that the evidence could be admitted. The Court of Appeals affirmed, concluding that balancing was unnecessary because, when evidence falls within a firmly rooted exception to the rule against hearsay, admission of such evidence in a probation revocation proceeding does not violate a defendant's due process confrontation interest. *Held*: In a probation revocation hearing, a defendant's due process right to confront adverse witnesses may give way to a showing of good cause for not allowing confrontation. Those interests should be balanced even when the evidence falls within a firmly rooted hearsay exception. In this case, the reliability of the evidence and the state's reasonable efforts to locate the witness established good cause that outweighed defendant's interest in confrontation.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

En Banc

On review from the Court of Appeals.*

Stacy M. Du Clos, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender.

Lauren P. Robertson, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on

_____

* On appeal from the Multnomah County Circuit Court, Shelley D. Russell, Judge. 313 Or App 578, 496 P3d 1077 (2021).

review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Ryan T. O'Connor, O'Connor Weber LLC, Portland, filed the brief for *amicus curiae* Oregon Criminal Defense Lawyers Association. Also on the brief were Rosalind M. Lee, Rosalind M. Lee LLC, Eugene, and Nora Coon, Salem.

GARRETT, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**GARRETT, J.**

Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, individuals on parole or probation are entitled to certain procedural safeguards in revocation proceedings, including the right to confront adverse witnesses. That right may be overcome, however, by a showing of good cause for not allowing confrontation.

This case concerns the test that applies to the question whether the government has established good cause. Defendant argues that his due process rights were violated when the trial court ruled that hearsay evidence—a recording of the victim's phone call to 9-1-1—was admissible to demonstrate that defendant had contacted the victim in violation of the terms of his probation. Defendant argues that the state did not show good cause for failing to produce the victim at the hearing, and that his confrontation right was thus violated. The trial court revoked probation, and the Court of Appeals affirmed. We allowed review and, for the reasons explained below, we affirm, but on different grounds than the Court of Appeals.

## I.   BACKGROUND

The facts relevant to our review are primarily procedural and are undisputed.

Defendant was serving a sentence of supervised probation for several domestic violence crimes committed against his girlfriend. One condition of his probation was that he was prohibited from contacting the victim. Defendant violated that condition, leading the victim to call 9-1-1 and ask for help.

At a probation revocation hearing, the state informed the trial court that the state had been unable to locate the victim—who was unhoused at the time of the hearing and had no stable address or phone number—despite numerous attempts to contact her. The state sought to admit a recording of the victim's 9-1-1 call as evidence that defendant had violated the no-contact provision. Defendant objected, asserting that he had the right to confront the victim under the Due Process Clause of the Fourteenth Amendment.

Defendant asked the trial court to apply the test from *State v. Wibbens*, 238 Or App 737, 741-42, 243 P3d 790 (2010), and *State v. Johnson*, 221 Or App 394, 190 P3d 455, *rev den*, 345 Or 418 (2008), (the "*Johnson* test"), which weighs the probationer's interest in confrontation against the government's good cause for denying it. The state agreed that *Johnson* provided the relevant test, which requires the trial court to weigh two factors bearing on the strength of defendant's confrontation interest (the importance of the evidence, and the probationer's opportunity to refute the evidence) against two factors bearing on the state's demonstration of good cause (the difficulty and expense of obtaining the witness, and the traditional indicia of reliability borne by the evidence).

The trial court ruled that the first, third, and fourth factors weighed in favor of the state, while the second factor favored defendant, and concluded that the 9-1-1 recording was admissible. It then ruled that defendant had violated his probation condition, and it revoked probation.[1]

On appeal, defendant argued that the trial court had misapplied the factors because the factors weighing in favor of defendant—the importance of the evidence (conceded by the state on appeal[2]) and the opportunity to refute the evidence—established a strong interest in confrontation that was not outweighed by the state's argument for good cause. The state argued that the trial court's ruling was correct under *Johnson*, but the state alternatively argued that no balancing was even required in this instance because the 9-1-1 recording qualified for the "excited utterance" exception to the hearsay rule. The state noted that, in *Johnson*, the Court of Appeals had left open the question of whether the four-factor balancing test must be applied to evidence that falls within a well-established hearsay exception. *See* 221 Or App at 403-04.

---

[1] After the court ruled that the recording of the 9-1-1 call was admissible, defendant stipulated to the violation of the no-contact condition. As a result, the recording was never admitted and is not in the record. The only description of the recording is the state's characterization of it to the trial court and defendant's lack of objection that it constitutes an excited utterance.

[2] On appeal, the state conceded that the trial court incorrectly viewed the first factor, the importance of the evidence, as favoring the state. Thus, the parties agree that the first factor weighs in favor of defendant.

A divided panel of the Court of Appeals affirmed. *State v. Martin*, 313 Or App 578, 496 P3d 1077 (2021). The majority resolved the question left open in *Johnson* by concluding that, when evidence falls within a "firmly rooted" exception to the rule prohibiting hearsay, the inherent reliability of the evidence is sufficient to satisfy due process without balancing. *Id.* at 583. The court noted that, because such a statement is "already considered so trustworthy that adversarial testing can be expected to add little to its reliability," "the due process concerns which ordinarily favor confrontation—and thus *Johnson* balancing—are not present." *Id.* at 582, 583.

Judge James dissented, concluding that no categorical exception to the balancing test is appropriate for "firmly rooted" hearsay exceptions. *Id.* at 589 (James, J., dissenting). The dissent reasoned that the due process confrontation right in a probation hearing "serves a purpose beyond the simple search for reliability," *id.*, and that due process requires a case-by-case analysis of the circumstances that is inconsistent with the rule that the majority adopted. *Id.* at 590 (citing *County of Sacramento v. Lewis*, 523 US 833, 850, 118 S Ct 1708, 140 L Ed 2d 1043 (1998)).

We allowed defendant's petition for review.

## II.   ANALYSIS

### A.   *Standard of Review*

The ultimate decision to revoke probation is generally a matter of discretion for the trial court. *See* ORS 137.545(5) (providing that a court "may" revoke probation); *see also Barker v. Ireland*, 238 Or 1, 4, 392 P2d 769 (1964) ("At [a probation revocation] hearing it is the duty of the trial court to decide what the facts are and then to exercise its discretion in one of two ways. The court may permit the [probationer] to remain on probation, or may revoke the probation and order the [probationer] held for the execution of any sentence provided by law."). However, the revocation in this case followed the trial court's conclusion that hearsay evidence could be admitted without violating defendant's confrontation rights under the Due Process Clause of the Fourteenth Amendment. That legal conclusion is one that

we review for legal error—his rights were either violated or not. *See State v. Washington*, 355 Or 612, 646, 330 P3d 596, *cert den*, 574 US 1016 (2014) ("To the extent that the trial court's [discretionary] ruling was predicated on a conclusion of law, however, we review that aspect of the decision for errors of law."); *cf. State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000) (explaining that, when this court reviews admissibility rulings with only one legally correct outcome, it reviews for legal error).

B.   *Legal Background*

Under the Fourteenth Amendment, a probationer has a due process right to confront and cross-examine a witness in a probation revocation proceeding, unless the state demonstrates good cause to deny that right. *Morrissey v. Brewer*, 408 US 471, 489, 92 S Ct 2593, 33 L Ed 2d 484 (1972) (setting forth the procedural due process requirements for revoking parole); *Gagnon v. Scarpelli*, 411 US 778, 782, 93 S Ct 1756, 36 L Ed 2d 656 (1973) (extending the reasoning and procedural safeguards from *Morrissey* to probation revocation).

Because this court has not previously discussed a probationer's confrontation right at a revocation hearing, we begin with the principles that govern the issue, which are drawn from the Supreme Court's decisions in *Morrissey* and *Gagnon*. In *Morrissey*, the Court held that a person on parole has a liberty interest that implicates the Due Process Clause; thus, the state cannot revoke parole and return an individual to custody without meeting certain requirements of procedural fairness. 408 US at 482, 487-89.

Among those requirements is that the revocation decision be preceded by a hearing, if requested by the parolee:

> "This hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation."

*Id.* at 488. The Court then concluded that, although it could not write a "code of procedure" for the states, the "minimum requirements" of due process include, among other things, "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Id.* at 488-89.

The Supreme Court did not further specify how courts should determine whether the state has established good cause for not allowing confrontation. That question has been addressed in numerous lower court cases, including by our Court of Appeals in *Johnson*, following case law from the Ninth Circuit. The *Johnson* test balances the right to confrontation against the state's good cause for not procuring the witness. 221 Or App at 401. It does so by evaluating four factors, the first two bearing on the strength of the probationer's interest and latter two bearing on the state's showing of good cause: (1) the importance of the challenged evidence to the court's finding; (2) the probationer's opportunity to refute the evidence; (3) the difficulty and expense of obtaining witnesses; and (4) traditional indicia of reliability borne by the evidence. *Id.* The Court of Appeals adopted that test from the Ninth Circuit's balancing test, described in *United States v. Comito*, 177 F3d 1166, 1171-72 (9th Cir 1999), which further developed the Ninth Circuit's balancing test that had been outlined in *United States v. Simmons*, 812 F2d 561, 564 (9th Cir 1987), *United States v. Martin*, 984 F2d 308, 310-13 (9th Cir 1993), and *United States v. Walker*, 117 F3d 417, 420 (9th Cir), *cert den*, 522 US 961 (1997).[3]

The Ninth Circuit has construed the due process confrontation right as "requiring that [a probationer] receive a fair and meaningful opportunity to refute or impeach the evidence against him in order 'to assure that the finding of a * * * violation will be based on verified facts.'" *Martin*, 984 F2d at 310 (quoting *Morrissey*, 408 US at 484). It has also described the purpose of the due process confrontation right as a means for ensuring that the hearing officer

---

[3] The Ninth Circuit articulates the factors slightly differently from the Court of Appeals: (1) "the importance of the hearsay evidence to the court's ultimate finding"; (2) "the nature of the facts to be proven by the hearsay evidence"; (3) the "inconvenience or expense" of procuring the witness; and (4) the traditional "indicia of reliability." *Comito*, 117 F3d at 1171-72.

makes a discretionary revocation decision based on an accurate understanding of the behavior constituting a violation while also maintaining the flexibility that is the cornerstone of procedural due process in administrative proceedings. *Martin*, 984 F2d at 313-14; *id.* at 311 ("[S]ufficient good cause in one set of circumstances may be insufficient in another."). It has explained that *Morrissey* and *Gagnon* together "delineate a process of balancing the probationer's right to confrontation against the [g]overnment's good cause for denying it." *Simmons*, 812 F2d at 564. It has also emphasized the importance of weighing the right to confrontation under the "specific circumstances" of each case. *Walker,* 117 F3d at 420.

As noted, the Court of Appeals adopted the Ninth Circuit test in *Johnson*. 221 Or App at 404. At the same time, the court declined to consider whether the admissibility of evidence falling within a firmly rooted hearsay exception would, "standing alone, satisfy due-process-based confrontation demands." *Id.* at 403-04.

In this case, the Court of Appeals did reach that question, and it adopted a categorical exception to the balancing requirement. *Martin*, 313 Or App at 583. The Court of Appeals held that, if a hearsay statement falls within a "firmly rooted" hearsay exception, then good cause is established and due process is satisfied; no balancing is required. *Id.* The Court of Appeals justified that conclusion by explaining that the reason for adversarial testing is diminished when the statement is already considered reliable under the rules governing hearsay and exceptions:

> "A statement qualifying for a firmly rooted hearsay exception is already considered so trustworthy that adversarial testing can be expected to add little to its reliability. \* \* \*
>
> "Under these circumstances, the due process concerns which ordinarily favor confrontation—and thus *Johnson* balancing—are not present. If cross examination does not increase the reliability of a statement admitted pursuant to a firmly rooted hearsay exception, then, by definition, allowing confrontation would not provide defendant a meaningful opportunity to test the veracity of the evidence for purposes of due process."

*Id.* at 582-83 (internal quotation marks and citations omitted). The Court of Appeals noted that several other courts have adopted a similar categorical exception for firmly rooted hearsay exceptions, including the Second Circuit. *Id.* (citing *United States v. Jones*, 299 F3d 103, 113-14 (2d Cir 2002)).

In adopting that categorical exception, the Court of Appeals parted company with the Ninth Circuit. In *Valdivia v. Schwarzenegger*, 599 F3d 984 (9th Cir), *cert den*, 562 US 1271 (2010), the Ninth Circuit held that its multi-factor balancing test is applicable even where the challenged evidence falls within a firmly rooted hearsay exception. *Id.* at 990 ("Reliability does not result in automatic admissibility: 'Simply because hearsay evidence bears some indicia of reliability does not render it admissible.' [*United States v. Hall*, 419 F3d 980, 988 (9th Cir), *cert den*, 546 US 1080 (2005).] Therefore, evidence falling under a hearsay exception does not circumvent the [multi-factor] balancing test. It remains a part of it as an 'indicia of reliability,' and subject to good cause analysis.").

## C.  *The Parties' Arguments*

On review, defendant argues that the Court of Appeals erred in adopting a categorical rule that, in a probation revocation hearing, the admission of evidence covered by a "firmly rooted" exception to the hearsay rule always comports with the Due Process Clause of the Fourteenth Amendment. Defendant contends that the ordinary balancing test under *Johnson* should apply, and that, under that test, his confrontation rights were violated. The state responds that the Court of Appeals was correct to conclude that no balancing is necessary if evidence falls within a firmly rooted hearsay exception; in the alternative, the state argues that, under *Johnson* balancing, defendant's confrontation rights were not violated. In short, we understand the parties to agree that the "good cause" issue is ordinarily determined by *Johnson* balancing; they differ only as to whether balancing is necessary *at all* when the state seeks to admit evidence that falls within a "firmly rooted" exception to the hearsay rule.

The parties' arguments place this court in a somewhat unusual position. As noted, this court has not previously considered which test to apply to determine whether the state showed "good cause" for not allowing confrontation. The parties themselves agree on what test ordinarily applies to that question—the *Johnson* test. We are not bound by the parties' arguments, however, and we are hesitant to decide the threshold constitutional question without full briefing by parties who dispute it. A future litigant may wish to raise the argument that no one makes here: namely, that a court evaluating "good cause" should consider factors in addition to or different than those set out in *Johnson*.[4] Thus, we approach this case as follows. In the absence of any argument that some other test should apply, we accept the parties' shared understanding that the *Johnson* test is applicable unless, as the state argues and the Court of Appeals held, the nature of the evidence in this case renders balancing unnecessary. The question that we resolve, therefore, is whether, in a probation revocation hearing, good cause for overcoming a defendant's due process confrontation right is *necessarily* established when the evidence that the state seeks to admit is covered by a firmly rooted exception to the hearsay rule.

---

[4] The parties' briefing makes clear that, although other courts to consider the "good cause" issue have uniformly required a balancing test, they are less uniform in their description of that test. Some courts generally describe the test as balancing the defendant's interest in confrontation against the state's good cause for not procuring the witness. *See United States v. Bueno-Beltrán*, 857 F3d 65, 68 (1st Cir), *cert den*, ___ US ___, 138 S Ct 278 (2017) (requiring courts to balance the probationer's right to confront a witness against the state's good cause, which includes the reliability of the hearsay statement). Some courts emphasize reliability as the most important factor; others divide the balancing process into more discrete factors. *See United States v. Jones*, 818 F3d 1091, 1100 (10th Cir 2016) (explaining that reliability is "very important"); *United States v. Doswell*, 670 F3d 526, 531 (4th Cir 2012) (emphasizing that reliability is a "critical factor"); *United States v. Lloyd*, 566 F3d 341, 345 (3d Cir 2009) (explaining that reliability is a "principal factor, although not the sole factor"); *Comito*, 177 F3d at 1171-72 (9th Cir 1999) (providing at least four factors for consideration, including the importance of the evidence, the nature of the facts to be proven, the efforts needed to procure the witness, and reliability of the evidence); *United States v. Zentgraf*, 20 F3d 906, 909 (8th Cir 1994) (emphasizing that establishing "fixed rules" about what constitutes "good cause" is not possible, but that good cause at least includes why confrontation is impracticable and the reliability of the evidence); *United States v. Frazier*, 26 F3d 110, 114 (11th Cir 1994) (indicating that reliability is a factor separate from the right to confrontation and the government's good cause).

D.   *The Due Process Confrontation Right*

          To answer that question, we return to what the
Supreme Court has said in its due process cases, includ-
ing *Morrissey*. Due process ensures that the government
cannot deprive individuals of liberty or property interests
without meeting certain procedural requirements. *Mathews
v. Eldridge*, 424 US 319, 332, 96 S Ct 893, 47 L Ed 2d 18
(1976). Due process is "flexible"; it "calls for such procedural
protections as the particular situation demands." *Morrissey*,
408 US at 481. The "touchstone of due process" is "funda-
mental fairness." *Gagnon*, 411 US at 790; *see also Armstrong
v. Manzo*, 380 US 545, 552, 85 S Ct 1187, 14 L Ed 2d 62
(1965) ("A fundamental requirement of due process is the
opportunity to be heard. It is an opportunity which must be
granted at a meaningful time and in a meaningful man-
ner." (Internal quotation marks and citations omitted.)).
After determining that the interest at stake in a given case
is a protected liberty or property interest, the Court deter-
mines, in light of the principles of fairness and flexibility,
what process is due.

          To determine what constitutes adequate process,
the Court considers three factors:

> "[f]irst, the private interest that will be affected by the offi-
> cial action; second, the risk of an erroneous deprivation of
> such interest through the procedures used, and the prob-
> able value, if any, of additional or substitute procedural
> safeguards; and finally, the [g]overnment's interest, includ-
> ing the function involved and the fiscal and administra-
> tive burdens that the additional or substitute procedural
> requirement would entail."

*Mathews*, 424 US at 335. The first factor, the private interest
affected, includes considering the length of time the interest
will be affected and the hardship imposed by deprivation
of the protected interest. *Id.* at 341-42. The second factor,
the fairness and reliability of existing procedures, considers
the nature of the inquiry, the types of evidence necessary
to satisfy that inquiry, and the nature of the hearing. *Id.* at
343-45. The third factor, the government's interest, includes
the costs to the public of administering the process—both
the financial and administrative burdens. *Id.* at 347. Thus,

the *Mathews* factors together balance the considerations of administering governmental functions efficiently, having an accurate understanding of the underlying facts, and minimizing the risk of mistake—in other words, fundamental fairness and administrative flexibility.

Those factors, grounded in the principles of fairness and flexibility, have led to a variety of combinations of safeguards to protect due process—each combination tailored to the specific needs of the situation. Possible safeguards include notice, a hearing either prior to the deprivation or following the deprivation, the opportunity to appear, the opportunity to present witnesses, the opportunity to confront adverse witnesses, the presence of counsel, a decision on the record, a statement of reasons, an impartial decision-maker, and a public hearing on the record. *See Morrissey*, 408 US at 489. Depending on the circumstances, the required safeguards range from a post-hoc remedy in state court to a full "trial-type" procedure prior to the deprivation of a protected interest. *Compare Ingraham v. Wright*, 430 US 651, 683, 97 S Ct 1401, 51 L Ed 2d 711 (1977) (holding that a remedy in state tort law alone satisfied due process for corporal punishment in schools and that no notice or hearing was required), *with Wilkinson v. Austin*, 545 US 209, 216, 225-26, 125 S Ct 2384, 162 L Ed 2d 174 (2005) (concluding that due process was satisfied by written notice of the factual basis for deprivation of a liberty interest, a pretermination hearing that the inmate may attend, the opportunity to rebut the factual allegations, and the opportunity to have the decision reviewed by another official), *and Goldberg v. Kelly*, 397 US 254, 267-71, 90 S Ct 1011, 25 L Ed 2d 287 (1970) (requiring a full trial-type hearing prior to terminating welfare benefits).

In *Morrissey*, the Court conducted that analysis in the context of parole revocation. 408 US at 488-89. That analysis was extended to probation revocation in *Gagnon*. 411 US at 782. The Court grounded its analysis of what procedures were required in the inherent flexibility of due process:

"It has been said so often by this Court and others as not to require citation of authority that due process is flexible and

> calls for such procedural protections as the particular situation demands. *** [Due process's] flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure."

*Morrissey*, 408 US at 481. The Court proceeded to conclude that some process was due based on the "grievous loss" to the parolee in being returned to incarceration. *Id.* at 481-82. It then analyzed the government's interest in being able to revoke parole if a parolee fails to comply with conditions of parole, along with the risk of erroneous revocation. *See id.* at 483. The Court concluded that the government's interest is important, but, more importantly, the government has no interest in revoking parole without any procedural safeguards. *Id.* at 483-84 (explaining that, rather, society has "an interest in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole, given the breach of parole conditions").

Based on that analysis of the interests and practical considerations of parole revocation, the Court summarized: "What is needed is an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Id.* at 484. The Court next explained the due process safeguards that are necessary at each stage of parole revocation. *Id.* at 485-89. The parolee must have the opportunity, if desired, for a hearing prior to the final revocation decision. *Id.* at 487. At that hearing, the parolee *must* have an opportunity to be heard and to rebut the allegations, or to provide mitigating circumstances that suggest revocation is not warranted. *Id.* at 488. The hearing must happen within a "reasonable time" of being taken into custody. *Id.* The Court then provided six minimum safeguards that must be provided at a revocation hearing: written notice; disclosure of evidence; opportunity to be heard in person and present witnesses and documentary evidence; the right to confront adverse witnesses unless good cause for not allowing confrontation is found; a "neutral and detached" hearing body;

and a written statement of evidence relied on and reasons for revocation. *Id.* at 489.

Having reviewed the principles above, the flexible nature of procedural due process, the "touchstone" of fundamental fairness, and the specific goal of preventing erroneous revocations of parole and probation, we are persuaded that, under *Morrissey*, a probationer's interest in confrontation should be balanced against the state's good cause for not producing a witness, regardless of whether the evidence falls within a firmly rooted hearsay exception. Like the Ninth Circuit, we conclude that, although strong indicia of evidence's reliability will weigh heavily in favor of finding good cause, reliability is but one factor in the analysis— balancing remains appropriate. *See Valdivia*, 599 F3d at 990.

Our conclusion is driven by the nature of a probation revocation decision. As the Supreme Court was careful to observe in *Morrissey*, such a decision has two discrete components: the first factual, the second discretionary. 408 US at 479-80 ("The first step in a revocation decision thus involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise: [S]hould the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?").

It is true, as the state points out, that, when describing the requirements of due process, the Court in *Morrissey* highlighted the importance of avoiding the risk of error by ensuring that decisions are based on "verified facts." *Id.* at 484. Relying on that principle, the state reasons that evidence qualifying for a "firmly rooted hearsay exception" is already so reliable that the opportunity for confrontation cannot be expected to affect its veracity.

However, the Supreme Court also observed repeatedly that a revocation decision consists of *more* than a factual determination about whether conditions were violated. *Id.* at 484 ("What is needed is an informal hearing structured

to assure that the finding of a parole violation will be based on verified facts *and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior.*" (Emphasis added.)); *see also id.* at 488 ("[The hearing] must lead to a final evaluation of any contested relevant facts *and consideration of whether the facts as determined warrant revocation.* The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, *or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation.*" (Emphases added.)).

In light of that discretionary component of the revocation decision, the presumed veracity of the evidence showing that conditions were violated does not completely resolve the question whether a probationer should have the opportunity to confront an adverse witness. As the Supreme Court noted in *Morrissey*, it may be equally important to a probationer to have the opportunity to explain "circumstances in mitigation." *Id.* at 488. The need for "fundamental fairness" in affording that opportunity, if desired, calls for the flexible approach that the Court described in *Morrissey*. We conclude that, under that approach, it is always appropriate to consider whether good cause exists for not allowing confrontation.

It is for those reasons that we also reject the state's argument that requiring balancing in this context would improperly elevate a probationer's rights above those enjoyed by a defendant in a criminal trial. The state reasons that criminal defendants enjoy the "full panoply" of constitutional protections at trial, including the Sixth Amendment right to confront witnesses, yet that right does not preclude admission of an excited utterance during a 9-1-1 call. The state correctly explains that the Sixth Amendment right to confrontation applies only to testimonial statements. *See Crawford v. Washington*, 541 US 36, 51, 124 S Ct 1354, 158 L Ed 2d 177 (2004) (holding that the Sixth Amendment Confrontation Clause applies only to testimonial statements, defined as a "solemn declaration or affirmation made for the purpose of establishing or proving some fact"). The state notes that an excited utterance in a 9-1-1 recording has been

deemed nontestimonial, and thus, the Sixth Amendment does not preclude its admission in a criminal trial. *See Davis v. Washington*, 547 US 813, 826-28, 126 S Ct 2266, 165 L Ed 2d 224 (2006) (concluding that statements made in a 9-1-1 call during an ongoing emergency were not "testimonial" under *Crawford*). Thus, the state contends, requiring a "good cause" showing to admit an excited utterance over a confrontation-based objection does not make sense in a probation revocation proceeding, where the "full panoply" of constitutional rights is not present to begin with.

Although we agree with the state that, under *Crawford* and *Davis*, the Sixth Amendment would allow the admission of the 9-1-1 recording in a criminal trial without a showing of good cause, we disagree that that fact disposes of the Fourteenth Amendment Due Process issue in this case. Those respective constitutional protections arise in different settings, serve different purposes, and require different analyses.

The "full panoply" of rights at trial includes, among others, the standard of proof beyond a reasonable doubt and the Sixth Amendment rights of confrontation, an impartial jury, a speedy and public trial, assistance of counsel, and notice of the charges against the accused. US Const, Amend VI. The purpose of the Sixth Amendment right to confrontation is primarily to prohibit *ex parte* interrogations as evidence against the accused. *See Crawford*, 541 US at 50. The other rights enshrined in the Sixth Amendment further similar goals—preventing specific harms that had existed at some time in the English or early American legal systems. *See, e.g.*, *McNeil v. Wisconsin*, 501 US 171, 177, 111 S Ct 2204, 115 L Ed 2d 158 (1991) ("The purpose of the Sixth Amendment counsel guarantee *** is to 'protec[t] the unaided layman at critical confrontations' with his 'expert adversary,' the government." (Alteration in original.)).

Those are protections that are generally not available in probation revocation proceedings. A probation revocation proceeding is not tried to a jury, and it requires only that the state prove the probation violation by a preponderance of the evidence, not beyond a reasonable doubt. *State v. Donovan*, 305 Or 332, 335, 751 P2d 1109 (1988). The state is

not constrained by the rules of evidence that apply at trial; hearsay is admissible unless it violates the Fourteenth Amendment confrontation right. *See* OEC 101(2)(e) (stating that the rules of evidence do not apply to probation revocation except the rules regarding privilege). The Fourteenth Amendment right to confront witnesses does exist as a procedural due process safeguard, but it gives way to a showing of good cause. *See Morrissey*, 408 US at 489.

As a result, it should be no surprise that the Court's due process confrontation analysis is altogether distinct from its Sixth Amendment Confrontation Clause analysis. The clauses apply to very different procedures: the determination of guilt, in a criminal trial, versus the discretionary decision to revoke parole or probation. Contrary to the state's argument, therefore, a categorical exception for "firmly rooted" hearsay exceptions is not necessary in order to respect the difference between the "greater" rights afforded at trial and the "lesser" rights afforded in probation revocation. Rather, the lesser degree of constitutional protection in probation and parole revocation proceedings is *already* reflected in the flexibility and interest-balancing that the Supreme Court has prescribed for those proceedings, in which a defendant's interest in confrontation, for example, may give way to a showing of good cause. That such balancing might result, in particular circumstances, in the exclusion of evidence that would be admitted in a different proceeding may be unusual, but it is not illogical given the different constitutional interests at stake.

In light of the purposes that a balancing test serves in providing a trial court with the flexibility needed to receive evidence and ultimately rule in a manner that comports with fundamental fairness, we conclude that the test should be applied even to evidence that has strong indicia of reliability. Of course, the reasons that the Court of Appeals highlighted for adopting a *per se* exception for "firmly rooted" hearsay exceptions may well often lead to the same result under a balancing test; the reliability of the evidence will weigh heavily in the state's favor (and correspondingly make it more difficult for a defendant to demonstrate how confrontation would be helpful). The presumed reliability of

an "excited utterance" is, certainly, a factor that will weigh in favor of admission over a defendant's objection, and, even under *Johnson* balancing, such evidence is likely to be admitted in most cases.[5] However, we do not see a reason to completely eliminate consideration of other factors that might lead to a different conclusion.

Having rejected the *per se* rule that the state advocates, we turn to whether the state established good cause for the admission of the 9-1-1 recording over defendant's objection. Applying the *Johnson* factors on which both parties rely, we conclude that it did.

The first two factors under *Johnson*—(1) the importance of the evidence and (2) the nature of the facts to be established, including defendant's opportunity to refute the evidence—relate to the strength of defendant's interest in confrontation. *Johnson*, 221 Or App at 401. The parties agree, as do we, that the evidence was important; indeed, the 9-1-1 recording was the only evidence that defendant had violated the no-contact condition of his probation. The state correctly points out, however, that the precise fact to be established by that recording—that contact occurred—is not particularly open to competing inferences or different interpretations. It is true that confrontation might have given defendant the opportunity to challenge the victim's description of some of the circumstances, or to provide further context for why the contact occurred, but defendant did not offer any contrary or mitigating information about the contact, despite having the opportunity to do so. *See id.*, 221 Or App at 405-06 ("[D]efendant had a full and fair opportunity to contest the challenged evidence, but he did not meaningfully do so."). He did not, for example, object to the state's characterization of the contact as "pushing." Taking the first two factors together, we conclude that defendant's interest in confrontation was not insignificant, but not particularly strong.

The third and fourth factors bear on the state's good cause for overcoming the right to confrontation. As to

---

[5] At oral argument, the state could not identify any case where application of a balancing test led to exclusion of "excited utterance" evidence.

the third factor, the difficulty and expense of locating the witness, the state informed the trial court that it had made multiple attempts to locate the witness—the victim, who did not have a stable address. The state had investigators visit places where she was known to have spent the night and make phone calls to numbers associated with her. It attempted to subpoena her, but it could not locate her to deliver the subpoena. Defendant does not dispute that those efforts occurred, but argues that the state should have done more, and that it should have sought a continuance to have more time to locate the victim. On this record, the state's efforts were sufficient. "Good cause" does not entail exhaustion of all options regardless of time and expense. *See United States v. Zentgraf*, 20 F3d 906, 909 (8th Cir 1994) (explaining that "good cause" cannot be described by "fixed rules," and that courts should look to "offers of why confrontation is undesirable or impractical" in addition to reliability). Given that the victim lacked either a stable residence or a reliable means of contact, it is speculative to suppose that further efforts would have made a difference.

The fourth factor, the traditional indicia of reliability borne by the evidence, also weighs in favor of the state. The 9-1-1 recording is hearsay and thus not as reliable as other forms of evidence; on the other hand, excited utterances are considered one of the most reliable forms of hearsay. *White v. Illinois*, 502 US 346, 355 n 8, 112 S Ct 736, 116 L Ed 2d 848 (1992) ("The exception for spontaneous declarations is at least two centuries old, and may date to the late 17th century." (Internal citations omitted.)). The 9-1-1 recording in this case was a call that the victim made while under the stress of defendant attacking her. Thus, we agree with the state that the indicia of reliability—a description of what the victim was experiencing, while she was experiencing it in the stress of the moment—further strengthen the state's showing of good cause.

In sum, we conclude that the state made a strong showing of good cause under the third and fourth factors that outweighs defendant's modest interest in confrontation as reflected by the first and second factors. Thus, the admission of the 9-1-1 recording at defendant's probation revocation

hearing did not violate his Fourteenth Amendment confrontation rights.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.